IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JENNIFER SWEDA, et al.,<br>                      *Plaintiffs,*<br><br>v.<br><br>THE UNIVERSITY OF PENNSYLVANIA, et al.,<br>                      *Defendants.* | No. 2:16-cv-04329-GEKP |

**PLAINTIFFS' RESPONSE TO DEFENDANTS'
NOTICE OF SUPPLEMENTAL AUTHORITY [DOC. 50]**

*White v. Chevron Corp*. (*White II*), No. 16-793, Doc. 63 (N.D. Cal. May 31, 2017), *appeal docketed*, No. 17-16208 (9th Cir. June 9, 2017), is not "supplemental" authority in support of Penn's motion to dismiss. Penn already heavily relied upon the earlier *White* decision regarding the original complaint in that case. Doc. 33-2 at 11 n.2, p. 28 & n.36, pp. 30–31, 33;[1] Doc. 39 at 17, 19 (citing *White v. Chevron Corp. (White I)*, No. 16-0793, 2016 U.S. Dist. LEXIS 115875 (N.D. Cal. Aug. 29, 2016)). The second *White* order mostly readopts the reasoning of the first order. *White II*, Order at 10 (construing opposition as a "motion for reconsideration"); *id*. at 18, 19, 20, 23, 25, 37 (rejecting allegations for reasons stated in "August 29, 2016 order" or "prior order"). Thus, *White II* offers nothing new for this Court to consider. It is unpersuasive and inapposite for the same reasons as the first decision. *See* Pls.' Opp., Doc. 36 at 31 n.21, p. 43.

    The specific points for which Penn cites *White II* do not support Penn's arguments here. Penn first notes that the court "dismissed claims that Chevron acted imprudently by selecting higher-cost share classes when lower-cost versions of the same investments were available."

---

[1] "Doc." page citations refer to the page numbers shown on the ECF header.

Doc. 50 at 1. The court cited its prior discussion of the *Renfro* line of cases,[2] and adhered to its prior ruling "that merely alleging that a Plan offers retail-class rather than institutional-class funds is insufficient to state a claim for breach of the duty of prudence, as fiduciaries have latitude to value investment features other than price, and indeed are required to do so[.]" *White II*, Order at 20:13–21, 25:26–26:1 (citing *White I*, 2016 U.S. Dist. LEXIS 115875, at *31–32).

While features other than price are indeed relevant,[3] the different share classes of a given mutual fund *have no different features* other than price.[4] That is precisely *why* courts have readily concluded that when a plan with the requisite bargaining power fails to obtain available lower-cost shares, it is at least plausible that the fiduciary's process for selecting the funds was flawed. Doc. 36 at 9 n.2, 20–21, 25–26; Doc. 42 at 2–3; Doc. 47 at 4–5; Doc. 52 at 1–2. The cases cited by the *White* court do not discuss features other than price in the context of different share classes of the same mutual fund. Rather, the courts discussed features of mutual funds compared to non-mutual fund alternatives such as collective trusts and separate accounts, which was the primary issue in those cases, but is not at issue here. Doc. 36 at 28–29 & n.19, 31–32; *Renfro*, 671 F.3d at 318 (mutual funds "are subject to a variety of reporting, governance, and transparency requirements that do not apply to other investment vehicles such as commingled pools."); *Tibble I*, 729 F.3d at 1134 (same, citing *Renfro*, 671 F.3d at 318); *Loomis*, 658 F.3d at

---

[2] *Renfro v. Unisys Corp.*, 671 F.3d 314 (3d Cir. 2011); *Hecker v. Deere & Co.*, 556 F.3d 575 (7th Cir. 2009); *Loomis v. Exelon Corp.*, 658 F.3d 667 (7th Cir. 2011); *Tibble v. Edison Int'l (Tibble I)*, 729 F.3d 1110 (9th Cir. 2013), *vacated*, 135 S.Ct. 1823 (2015)).

[3] *See, e.g.*, Doc. 36 at 34–35 (citing 29 C.F.R. §2550.404a-1(b)). In fact, it is *Penn* that has argued that price should be the sole criterion for evaluating prudence. *See, e.g.*, 5/4/17 Tr. 28:13–14 ("The beginning and end of the inquiry is the expense ratio, the continuum, the range.").

[4] *Tibble v. Edison Int'l (Tibble II)*, 135 S. Ct. 1823, 1826 (2015); *Tibble v. Edison Int'l (Tibble III)*, 843 F.3d 1187, 1198 (9th Cir. 2016)(en banc)(institutional-class shares "are substantially identical—*other than their lower cost*—to" retail-class shares)(emphasis added); *Tibble v. Edison Int'l*, No. 07-5359, 2010 U.S. Dist. LEXIS 69119, at *53 n.14 (C.D. Cal. July 8, 2010)(finding fiduciaries liable for "imprudent decision to invest in *more expensive, but otherwise identical*, retail share classes when cheaper institutional share classes were available.")(emphasis added), *aff'd*, *Tibble I*, 729 F.3d at 1137 ("[C]rucially … there were no salient differences in the investment quality or management.").

671–72 ("privately held trusts or commingled pools" lack certain features of mutual funds).

In adhering to its August 2016 order, the *White* court did not cite the intervening December 2016 opinion in *Tibble v. Edison Int'l (Tibble III)*, 843 F.3d 1187, 1198 (9th Cir. 2016)(en banc). Thus, *White* overlooked a controlling decision in which its en banc court of appeals analyzed the share class issue at length and unanimously held that it is imprudent to waste participants' money on unnecessary retail fees. *Tibble III*, 843 F.3d at 1197–98.

*White* did discuss the earlier panel decision in *Tibble I*, which affirmed a post-trial finding that the defendant "had been imprudent in deciding to include retail-class shares of three specific mutual funds in the Plan menu." *White II*, Order at 22:22–26 (quoting *Tibble I*, 729 F.3d at 1137). The court nevertheless found *Tibble I* distinguishable because the defendants there were liable for a failure to *investigate* institutional class shares, while the *White* complaint contained "no facts relating to investigations into the appropriateness of various funds." *White II*, Order at 22:26–23:3, 25:22–23. But the "extensive post-trial findings of fact" addressed in *Tibble I* were based on "a wealth of evidence" and expert testimony. *Terraza v. Safeway Inc.*, No. 16-3994, 2017 U.S. Dist. LEXIS 35732, at *42 (N.D. Cal. Mar. 13, 2017). Before discovery, the *Tibble* plaintiffs did not have access to such detailed facts. *See* Doc. 36 at 18–19.[5] Under the *White* court's reasoning, the *Tibble* plaintiffs would not have had an opportunity to obtain that evidence, leaving the fiduciaries' breach unremedied.

Penn notes that the court also reiterated its prior finding that *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585 (8th Cir. 2009), was distinguishable "because the claim regarding the selection of retail-class mutual funds in that case was accompanied by allegations that the funds paid kickbacks to the plan's trustee in exchange for including the funds in the plan." *White II*, Order at 23:5–10 (citing *White I*, 2016 U.S. Dist. LEXIS 115875, at *36). The court disregarded

---

[5] Undersigned counsel also represents the *Tibble* plaintiffs.

the plaintiffs' allegations "that defendants were compensating Vanguard for its publicly disclosed policy of passively voting securities in favor of management positions," because the allegations were made "on information and belief." *Id.* at 14:18–27, 23:10–13.[6] Here, Plaintiffs do not rely on a Vanguard voting policy. Plaintiffs allege that Penn failed to scrutinize the recordkeepers' interest in including retail-class shares that paid the recordkeepers more revenue sharing, in an amount that far exceeded the value of their services to the Plan. Doc. 36 at 13, 20–22, 39; Doc. 47 at 6–7. While Plaintiffs do not use the "kickback" label, the substance of the allegations is similar to the scheme described in *Braden*. Doc. 36 at 20–22; Doc. 47 at 6–7.

The *White* court also relied upon other facts that are not present here. Of the 13 retail-class mutual funds at issue in *White*, 10 were replaced with institutional shares within the first two years of the class period, and the three remaining retail funds were removed by the end of the class period. *White II*, Order at 13:9–11, 25:2–5, 30:7–11; *White I*, 2016 U.S. Dist. LEXIS 115875, at *26, 34; *White* Am. Compl., Doc. 41 at 32–34 (¶¶79–85). While Penn claims that some of the 58 higher-cost share classes identified in Plaintiffs' complaint were eventually converted to institutional-class shares, Penn does not dispute that dozens of the higher-cost shares remain in the Plan to date. Doc. 36 at 8–9, 13, 21, 26–29 & n.18; *cf.* Doc. 39 at 11, 18–19.

Such facts were also not present in *Renfro*; the operative complaint identified no available lower-cost shares, and the appellate brief cited by Penn identified available lower-cost shares for only three funds, for which the difference in fees was only 0.03%. Doc. 36 at 29; *cf.* Doc. 39 at 11 (citing *Renfro*, No. 10-2447, Appellants' Br. at 36). Penn notes that *White II* found it unclear why specifically identifying the available lower-cost shares would distinguish the claim from

---

[6] *Cf. Park v. Thompson*, 851 F.3d 910, 928 (9th Cir. 2017)("The *Twombly* plausibility standard . . . does not prevent a plaintiff from pleading facts alleged upon information and belief where the facts are peculiarly within the possession and control of the defendant or where the belief is based on factual information that makes the inference of culpability plausible.")(quoting *Arista Records, LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010)).

4

*Renfro*. Doc. 50 at 2. The reason is that identifying concrete ways in which the fiduciary easily could have reduced the plan's fees—had it conducted a reasonable investigation into available share classes—raises a stronger inference of a flawed process than the "conclusory assertions" and "general allegations" of breach in *Renfro*, 671 F.3d at 327–28; Doc. 36 at 29; Doc. 47 at 2.

The *White* court also found an "obvious, alternative explanation" for the defendants' use of the retail share classes—to pay "the Plan's recordkeeping expenses before the Plan's fiduciaries negotiated a flat, per-participant fee in 2012 in exchange for moving to the cheaper, institutional share classes." *White II*, Order at 25:2–5. To do so, the court discredited the plaintiffs' calculations that the plan paid annual recordkeeping expenses of $167–$181 per participant, finding the amount to be incorrect "for the reasons argued by defendants." *Id*. at 27:18–29:12, 31:24–32:3, 34:2–4. Here, Penn does not dispute Plaintiffs' calculation that the Plan paid the two recordkeepers a combined annual total of $4.4 million to $5.5 million (an average of $220–$250 per participant), and Penn did not negotiate a flat per-participant fee after the Plan's fees reached such excessive levels. Doc. 36 at 27, 39–43. Paying an unreasonable level of administrative fees is not a lawful "obvious alternative explanation" for Penn's use of 58 higher-cost share classes.

Penn also cites *White II* as rejecting a claim that a particular investment option should have been removed sooner due to underperformance. Doc. 50 at 2–3. Again, the court simply readopts what it "previously held … in the August 29, 2016 Order," which Penn already cited. *White II*, Order at 37:2–9; Doc. 33-2 at 30–31. And the decision was based on facts that are not present here, including that the fund was removed once performance deteriorated. *White II*, Order at 35:2–26. In contrast, Penn continues to retain the CREF Stock and TIAA Real Estate despite a sustained track record of long-term underperformance that began years ago. Doc. 36 at 35–38.

For these reasons, *White II* does not support Penn's motion to dismiss.

June 14, 2017                                    Respectfully submitted,

                                                 /s/ *Jerome J. Schlichter*
                                                 SCHLICHTER, BOGARD & DENTON, LLP
                                                 Jerome J. Schlichter, MO No. 32225*
                                                 Michael A. Wolff, MO No. 38207*
                                                 100 South Fourth Street, Ste. 1200
                                                 St. Louis, MO 63102
                                                 Phone: (314) 621-6115
                                                 Fax: (314) 621-5934
                                                    * admitted *Pro Hac Vice*

                                                 *Lead Counsel for Plaintiffs*

                                                 David Promisloff (ID# 200971)
                                                 PROFY, PROMISLOFF & CIARLANTO, P.C.
                                                 100 N. 22nd Street, Unit 105
                                                 Philadelphia, PA 19103
                                                 Phone: (215) 259-5156
                                                 Fax: (215) 600-2642
                                                 david@prolawpa.com

                                                 *Local Counsel for Plaintiffs*

**CERTIFICATE OF SERVICE**

I, Jerome J. Schlichter, hereby certify that on this 14th day of June, 2017, I caused a true and correct copy of the foregoing to be served by ECF upon the following counsel of record for Defendants:

Christopher Boran (christopher.boran@morganlewis.com)
Michael L. Banks (mbanks@morganlewis.com)
Brian T. Ortelere (bortelere@morganlewis.com)

                                                 */s/ Jerome J. Schlichter*
                                                 Jerome J. Schlichter