# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA
### PHILADELPHIA DIVISION

JENNIFER SWEDA, ET AL.,

                    *Plaintiffs,*

 v.

THE UNIVERSITY OF PENNSYLVANIA,
ET AL.,

                    *Defendants.*

No. 2:16-cv-04329-GEKP

## MEMORANDUM IN SUPPORT OF PLAINTIFFS'
## MOTION FOR CLASS CERTIFICATION

SCHLICHTER, BOGARD & DENTON, LLP
Jerome J. Schlichter*
Troy A. Doles*
Heather Lea*
Sean E. Soyars*
100 South Fourth Street, Ste. 1200
St. Louis, MO 63102
Phone: (314) 621-6115
Fax: (314) 621-5934
   *admitted *pro hac vice*

*Lead Counsel for Plaintiffs*

PROMISLOFF LAW, P.C.
David Promisloff (ID# 200971)
5 Great Valley Parkway, Suite 210
Malvern, PA 19355
Phone: (215) 259-5156
Fax: (215) 600-2642
david@prolawpa.com

*Local Counsel for Plaintiffs*

**CONTENTS**

Authorities .......................................................................................................... ii

Introduction ........................................................................................................ 1

Background ......................................................................................................... 3

   I.    Parties and the Plans. ........................................................................ 3

   II.   Plaintiffs' claims. ............................................................................... 6

   III.  The proposed class. ........................................................................... 8

Argument ............................................................................................................ 8

   I.    Plaintiffs meet the requirements of Rule 23(a). ............................. 9

       A.   Numerosity ................................................................................ 9

       B.   Commonality.............................................................................. 9

       C.   Typicality ................................................................................ 12

       D.   Adequacy ................................................................................ 16

   II.   Plaintiffs meet the requirements of Rule 23(b)(1). ...................... 20

       A.   The proposed class satisfies Rule 23(b)(1)(A). ...................... 20

       B.   The proposed class satisfies Rule 23(b)(1)(B). ...................... 23

Conclusion ........................................................................................................ 25

# AUTHORITIES

**Cases**

*Abbott v. Lockheed Martin Corp.,*
  No. 06-701, 2015 WL 4398475 (S.D. Ill. July 17, 2015) ........................................ 17

*Amchem Prods., Inc. v. Windsor,*
  521 U.S. 591 (1997) .................................................................................. 20

*Amgen, Inc. v. Conn. Ret. Plans & Tr. Funds,*
  568 U.S. 455 (2013) .................................................................................... 8

*Baby Neal v. Casey,*
  43 F.3d 48 (3d Cir. 1994) ............................................................................. 9

*Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.,*
  222 F.3d 52 (2d Cir. 2000) ........................................................................... 19

*Cassell v. Vanderbilt Univ.,*
  No. 16-2086, 2018 WL 5264640 (M.D. Tenn. Oct. 23, 2018) ............................ 2, 13

*Cassell v. Vanderbilt Univ.,*
  No. 16-2086, Doc. 147-1 (M.D. Tenn. Apr. 23, 2019) ............................................ 22

*Cates v. Trs. of Columbia Univ. in the City of N.Y.,*
  No. 16-6524, Doc. 218 (S.D.N.Y. Nov. 15, 2018),
  *Rule 23(f) pet. denied*, No. 18-3559 (2d Cir. Mar. 13, 2019) .................................. 2

*Clark v. Duke Univ.,*
  No. 16-1044, 2018 WL 1801946 (M.D.N.C. Apr. 13, 2018) .................... 2, 13, 23, 24

*Clark v. Duke Univ.,*
  No. 16-1044, 2019 WL 2588029 (M.D.N.C. June 24, 2019) .................................. 22

*Cryer v. Franklin Templeton Res., Inc.,*
  No. 16-4265, 2017 WL 4023149 (N.D. Cal. July 26, 2017) ....................... 11, 15, 16

*Cunningham v. Cornell Univ.,*
  No. 16-6525, 2019 WL 275827 (S.D.N.Y. Jan. 22, 2019),
  *Rule 23(f) pet. denied*, No. 19-324 (2d Cir. June 19, 2019) .................................... 2

*Eliasen v. Green Bay & W. R. Co.,*
  93 F.R.D. 408 (E.D. Wis. 1982) ..................................................................... 24

*Fifth Third Bancorp v. Dudenhoeffer,*
  573 U.S. 409  (2014) ..................................................................................... 6

*Georgine v. Amchem Prods., Inc.,*
  83 F.3d 610 (3d Cir. 1996) ............................................................................. 16

*Graden v. Conexant Sys. Inc.,*
  496 F.3d 291 (3d Cir. 2007) .................................................................... 1, 16, 18

*Gunnells v. Healthplan Servs., Inc.*,
 348 F.3d 417 (4th Cir. 2003) ................................................................ 19

*Harris v. Koenig*,
 271 F.R.D. 383 (D.D.C. 2010) ........................................................ 23, 24

*Hassine v. Jeffes*,
 846 F.2d 169 (3d Cir. 1988) .................................................................. 18

*Henderson v. Emory Univ.*,
 No. 16-2920, 2018 WL 6332343 (N.D. Ga. Sept. 13, 2018) ............. 2, 13, 19, 23, 24

*Hoxworth v. Blinder, Robinson & Co.*,
 980 F.2d 912 (3d Cir. 1992) .................................................................. 12

*In re Citigroup Pension Plan ERISA Litig.*,
 241 F.R.D. 172 (S.D.N.Y. 2006) .......................................................... 21

*In re Cmty. Bank of N. Virginia*,
 622 F.3d 275 (3d Cir. 2010) .................................................................. 18

*In re Merck & Co., Inc. Sec., Derivative & ERISA Litig.*,
 No. 05-1151, 2009 WL 331426 (D.N.J. Feb. 10, 2009) ........................ 11

*In re Northrop Grumman Corp. ERISA Litig.*,
 No. 06-6213, 2011 WL 3505264 (C.D. Cal. Mar. 29, 2011) ..................... 15, 16, 19

*In re Schering Plough Corp. ERISA Litig.*,
 589 F.3d 585 (3d Cir. 2009) ........................................ 1, 8, 9, 10, 11, 12, 16, 20, 24

*In re YRC Worldwide, Inc. ERISA Litig.*,
 No. 09-2593, 2011 WL 1303367 (D. Kan. Apr. 6, 2011) ........................ 24

*Kanawi v. Bechtel Corp.*,
 254 F.R.D. 102 (N.D. Cal. 2008) ........................... 11, 12, 14, 16, 19, 20, 23

*Krueger v. Ameriprise Fin. Inc.*,
 304 F.R.D. 559 (D. Minn. 2014) ......................... 11, 14, 15, 16, 18, 23, 24

*LaRue v. DeWolff, Boberg & Assocs.*,
 552 U.S. 248 (2008) ................................................................................ 1

*Leber v. Citigroup 401(k) Plan Inv. Comm.*,
 323 F.R.D. 145 (S.D.N.Y. 2017) ..................................................... 15, 24

*Marcus v. BMW of N. Am., LLC*,
 687 F.3d 583 (3d Cir. 2012) .................................................................. 14

*Mass. Mutual Life Ins. Co. v. Russell*,
 473 U.S. 134 (1985) ......................................................................... 1, 18

*Moore v. Comcast Corp.*,
 268 F.R.D. 530 (E.D. Pa. 2010) ..................................................... 11, 24

*Moreno v. Deutsche Bank Ams. Holding Corp.*,
   No. 15-9936, 2017 WL 3868803 (S.D.N.Y Sept. 5, 2017) ...................................... 24

*Munro v. Univ. of S. California*,
   No. 16-6191, 2019 WL 7842551 (C.D. Cal. Dec. 20, 2019), *Rule 23(f) pet.*
   *denied*, No. 20-80001 (9th Cir. Feb. 27, 2020) ......................................................... 2

*New Directions Treatment Servs. v. City of Reading*,
   490 F.3d 293 (3d Cir. 2007) .................................................................................. 17

*Ortiz v. Fibreboard Corp.*,
   527 U.S. 815 (1999) ............................................................................................... 23

*Piazza v. EBSCO Indus.*,
   273 F.3d 1341 (11th Cir. 2001) ............................................................................. 23

*Reyes v. Netdeposit, LLC*,
   802 F.3d 469 (3d Cir. 2015) .................................................................................... 9

*Sacerdote v. N.Y. Univ.*,
   No. 16-6284, 2018 WL 840364 (S.D.N.Y. Feb. 13, 2018) ....................................... 2

*Shanehchian v. Macy's, Inc.*,
   No. 07-828, 2011 WL 883659 (S.D. Ohio Mar. 10, 2011) ................................ 21, 23

*Sheinberg v. Sorensen*,
   606 F.3d 130 (3d Cir. 2010) .................................................................................. 17

*Stanford v. Foamex L.P.*,
   263 F.R.D. 156 (E.D. Pa. 2009) ................................................................. 14, 23, 24

*Stewart v. Abraham*,
   275 F.3d 220 (3d Cir. 2001) .................................................................................... 9

*Surowitz v. Hilton Hotels Corp.*,
   383 U.S. 363 (1966) ............................................................................................... 19

*Sweda v. Univ. of Pennsylvania*,
   923 F.3d 320 (3d Cir. 2019), *cert. denied,* 140 S.Ct. 2565 (2020)................. 1, 7, 10

*Tibble v. Edison Int'l*,
   575 U.S. 523, 135 S. Ct. 1823 (2015) ....................................................... 3, 7, 15, 17

*Tracey v. MIT*,
   No. 16-11620, 2018 WL 5114167 (D. Mass. Oct. 19, 2018)..................................... 2

*Tussey v. ABB, Inc.*,
   746 F.3d 327 (8th Cir. 2014) .................................................................................. 15

*Tussey v. ABB, Inc.*,
   850 F.3d 951 (8th Cir. 2017) .................................................................................. 22

*Tussey v. ABB, Inc.*,
   No. 06-4305, 2012 WL 1113291 (W.D. Mo. Mar. 31, 2012)................................... 22

*Tussey v. ABB, Inc.*,
 No. 06-4305, 2012 WL 5386033 (W.D. Mo. Nov. 2, 2012) ..................................... 18

*Vellali v. Yale Univ.*,
 333 F.R.D. 10 (D. Conn. 2019) ............................................................. 2, 19, 23, 24

*Wal-Mart Stores, Inc. v. Dukes*,
 564 U.S. 338 (2011) ........................................................................................ 9, 10

**Statutes**

29 U.S.C. §1002(34) .............................................................................................. 3

29 U.S.C. §1002(7) ................................................................................................ 3

29 U.S.C. §1102(a) ................................................................................................ 4

29 U.S.C. §1104(a) ................................................................................................ 1

29 U.S.C. §1104(a)(1) .................................................................................... 7, 9, 21

29 U.S.C. §1105 .................................................................................................... 4

29 U.S.C. §1109(a) ........................................................................................... 1, 18

29 U.S.C. §1132(a)(2) ........................................................................................ 1, 8

**Rules**

Fed. R. Civ. P. 23(a) ............................................................................................. 8

Fed. R. Civ. P. 23(a)(1) ......................................................................................... 9

Fed. R. Civ. P. 23(a)(2) ......................................................................................... 9

Fed. R. Civ. P. 23(a)(3) ....................................................................................... 12

Fed. R. Civ. P. 23(a)(4) ....................................................................................... 16

Fed. R. Civ. P. 23(b)(1) ....................................................................................... 20

Fed. R. Civ. P. 23(b)(1)(A) ......................................................................... 20, 21, 23

Fed. R. Civ. P. 23(b)(1)(B) ................................................................................... 23

Fed. R. Civ. P. 23(g)(1) ....................................................................................... 18

Fed. R. Civ. P. 23(g)(1)(A) .................................................................................. 17

**Treatises**

Rubenstein, 3 *Newberg on Class Actions* (5th ed. 2017) ........................................... 24

**INTRODUCTION**

As fiduciaries of three retirement plans for University of Pennsylvania employees,[1] Defendants are subject to ERISA's strict fiduciary standards derived from the law of trusts. *See Sweda v. Univ. of Pennsylvania*, 923 F.3d 320, 327–28 (3d Cir. 2019), *cert. denied,* 140 S.Ct. 2565 (2020); 29 U.S.C. §1104(a)(1)(A)–(B).

Plaintiffs assert that Defendants breached ERISA's strict standards by causing the Plans to incur excessive fees and providing imprudent investment options to participants. As participants in the Plans, ERISA §502(a)(2) authorizes Plaintiffs to bring suit "in a representative capacity on behalf of the plan as a whole" to obtain the Plans' remedies under ERISA §409(a). *Mass. Mutual Life Ins. Co. v. Russell*, 473 U.S. 134, 142 n.9 (1985); *see* 29 U.S.C. §1109(a), §1132(a)(2). "On their face," these provisions "permit recovery of *all* plan losses caused by a fiduciary breach." *LaRue v. DeWolff, Boberg & Assocs.*, 552 U.S. 248, 261 (2008) (Thomas, J., concurring) (emphasis in original); *Graden v. Conexant Sys. Inc.*, 496 F.3d 291, 296 (3d Cir. 2007) (§502(a)(2) "merely codifies for ERISA participants and beneficiaries a classic trust-law process for recovering trust losses through a suit on behalf of the trust.").

In light of the inherently representative nature of §502(a)(2) claims, involving plan-wide conduct and remedies, the Third Circuit holds that such cases are "paradigmatic examples" of classes that should be certified under Rule 23(b)(1). *In re Schering Plough Corp. ERISA Litig*., 589 F.3d 585, 604 (3d Cir. 2009). In other

---

[1] The names of the three plans, collectively "Plans," are the University of Pennsylvania Matching Plan ("Matching Plan"), the Supplemental Retirement Annuity Plan of the University of Pennsylvania ("Supplemental Plan"), University of Pennsylvania Basic Plan ("Basic Plan"). Second Am. Compl. ¶1 (Doc. 69).

cases involving university retirement plans—which Penn describes as involving nearly identical claims (Doc. 33-2 at 8)[2]—every court to address the issue has granted certification of a class similar to Plaintiffs'. *Cunningham v. Cornell Univ.*, No. 16-6525, 2019 WL 275827, *2 (S.D.N.Y. Jan. 22, 2019) ("Class certification in all cases in which a motion for certification has been decided has been granted."), *Rule 23(f) pet. denied*, No. 19-324 (2d Cir. June 19, 2019); *Munro v. Univ. of S. California*, No. 16-6191, 2019 WL 7842551, *10 (C.D. Cal. Dec. 20, 2019), *Rule 23(f) pet. denied*, No. 20-80001 (9th Cir. Feb. 27, 2020); *Vellali v. Yale Univ.*, 333 F.R.D. 10, 18 (D. Conn. 2019); *Cates v. Trs. of Columbia Univ. in the City of N.Y.*, No. 16-6524, Doc. 218 (S.D.N.Y. Nov. 15, 2018), *Rule 23(f) pet. denied*, No. 18-3559 (2d Cir. Mar. 13, 2019); *Cassell v. Vanderbilt Univ.*, No. 16-2086, 2018 WL 5264640 (M.D. Tenn. Oct. 23, 2018); *Tracey v. MIT*, No. 16-11620, 2018 WL 5114167 (D. Mass. Oct. 19, 2018); *Henderson v. Emory Univ.*, No. 16-2920, 2018 WL 6332343 (N.D. Ga. Sept. 13, 2018); *Clark v. Duke Univ.*, No. 16-1044, 2018 WL 1801946 (M.D.N.C. Apr. 13, 2018); *Sacerdote v. N.Y. Univ.*, No. 16-6284, 2018 WL 840364 (S.D.N.Y. Feb. 13, 2018).

This Court should reach the same result. Plaintiffs are pursuing these claims on behalf of their Plans to obtain remedies due their Plans. The Plans' injuries, and hence the losses to participants' individual accounts, resulted from the same course of plan-level conduct. All participants share a common interest in establishing Defendants' liability and obtaining a remedy for the Plans. The evidence needed to

---

[2] "Doc." page references refer to the page number on the ECF header.

establish Defendants' liability and the Plans' losses is exclusively common proof. Any recovery an individual participant would obtain for her individual account derives from her allocation of the Plans' recovery, which requires a determination of the Plans' losses for all participant accounts. In addition, any equitable and other relief, such as structural changes to the Plans or removal of the fiduciaries, necessarily affects all participants. Thus, as explained further below, the Court should certify this action as a class action under Rule 23(b)(1), appoint each of the named Plaintiffs as a class representative, and appoint Schlichter Bogard & Denton LLP as class counsel.

## BACKGROUND

### I.      Parties and the Plans.

Plaintiffs Jennifer Sweda, Benjamin A. Wiggins, Robert L. Young, Faith Pickering, Pushkar Sohoni, and Rebecca N. Toner are six former employees of University of Pennsylvania and participants in the Plans. Second Am. Compl. ("SAC") ¶¶13–18 (Doc. 69); Answer to Second Am. Compl. ("Answer") ¶¶13–18 (Doc. 74); Plaintiffs' Declarations, ¶1 of each (filed herewith); *see* 29 U.S.C. §1002(7). The Plans are individual account, defined contribution plans, meaning "participants' retirement benefits are limited to the value of their own individual investment accounts, which is determined by the market performance of employee and employer contributions, less expenses." *Tibble v. Edison Int'l*, 575 U.S. 523, 135 S.Ct. 1823, 1826 (2015); *see* 29 U.S.C. §1002(34).

Defendants are the Plans' fiduciaries. SAC ¶¶19–26. The University of Pennsylvania, acting through its Board of Trustees, is the Plans' named fiduciary

3

(*see* 29 U.S.C. §1102(a)), with authority to control the management of the Plan and disposition of its assets. SAC ¶¶19–20; Doc. 33-5 at 13, 15 (§§2.27, 2.45); Doc. 33-6 at 16 (§7.06(a)). The Board appointed the Investment Committee ("Committee") as a named fiduciary responsible for investment matters, including determining the available investment options in the Plans. SAC ¶¶21–22, 75; Answer ¶¶21–22, 75; Ex. 1 at 35 (Article 7.06(b)) (2019 Matching Plan document); Ex. 2 at 33 (Article 12.06(b)) (2019 Basic Plan document); Ex. 3 at 29–30 (§9.06(a), (c)) (2014 Supplemental Plan document); Ex. 4 (Investment Committee Charter); Ex. 5 at (2015 Investment Policy Statement). Penn's Vice President of Human Resources (Defendant Heuer) is a named fiduciary and the designated Plan Administrator. SAC ¶¶23–25; Answer ¶¶23–25; Ex. 1 at 35 (Article 7.06(a)); Ex. 2 at 32 (Article 12.06(a)); Ex. 3 at 29–30 (§9.06(b)). Even though the University appointed the Committee and the Plan Administrator to manage the Plans, the University remained responsible for monitoring the Committee and the Administrator and is vicariously liable for their breaches of fiduciary duty. 29 U.S.C. §1105(a), (c)(2)(A); *McMahon v. McDowell*, 794 F.2d 100, 109 (3d Cir. 1986) (applying doctrine of *respondeat superior* in ERISA case to allow recovery "directly from the employer"). Because Plaintiffs' claims concern Plan-level decisions made by Defendants collectively and individual defendant liability does not affect class certification, Plaintiffs refer to the defendants collectively as "Penn" or "Defendants."

Although the Plans are distinct for accounting and tax purposes, Penn manages the three plans as a single retirement program. Penn has referred to the Matching

Plan and Basic Plan as two components "of the overall Tax-Deferred Retirement Plan of the University of Pennsylvania." Ex. 6 at Cover (2013 Summary Plan Description). Under the Matching Plan, employees may contribute up to 5% of their income, and the University matches those contributions. Ex. 1 at 13–15 (Art. 4.01–4.03); Ex. 5 at 1. Under the Basic Plan, the University contributes a set percentage on behalf of the employee. Ex. 2 at 12 (Art. 4.01); Ex. 5 at 2. Employees who wish to contribute more than 5% of income may do so through the Supplemental Plan. Ex. 3 at 7 (§4.01); Ex. 5 at 2. Accordingly, there is substantial overlap among the Matching Plan's 21,412 participants, the Basic Plan's 21,713 participants, and the Supplemental Plan's 12,021 participants. *See* Answer ¶12. Substantially all participants who elect to contribute to the Matching Plan also have an account in the Basic Plan, and many, including four of the six named Plaintiffs, have accounts in all three Plans. *See* Plaintiffs' Declarations, ¶1 of each; Answer ¶¶13–19.

Penn manages the Plans on a centralized basis through the Plan Administrator and the Investment Committee. The Committee's responsibilities include evaluating, selecting, and monitoring the Plans' investment options. Ex. 4 at 1–2 (§§1.1, 1.2); Ex. 5 at 1–3. The Committee followed an Investment Policy Statement ("IPS"), which sets forth uniform criteria to be applied to the investment providers and investment options available in the Plans. Ex. 5 at 2–5. Given this uniform approach, the Plans have the same two recordkeepers and investment providers (TIAA and Vanguard), and provide the same menu of investment options, which are the recordkeepers' own products. Ex. 5 at 2 ("Although the Plans are separate and

5

distinct, the investment approach and the available investment alternatives are the same for the Plans."); Ex. 7 at 179:4–25 (Mulhern Dep.); Exs. 8–16, "Schedule of Assets (Held at End of Year)" (excerpts of 2010, 2014, and 2018 Forms 5500).

Each investment option deducts various percentages of asset value of the investment on a recurring basis to pay various expenses. Ex. 17 at 3 (Summary of Plan Services and Costs). The total of those deductions is described as the investment's total expense ratio. *See id*. Those expenses proportionately reduce the value of each participant's retirement account. *Id*.; SAC ¶43. The Plans' administrative expenses (primarily for recordkeeping) were paid through sharing of a portion of the total expense ratios (a practice called revenue sharing). SAC ¶¶45, 107; Answer ¶¶45, 107; *see* Exs. 8–16, Schedule C of each (TIAA and Vanguard received "indirect compensation"). These administrative expenses "are allocated to each participant in a uniform way." Ex. 17 at 3; Ex. 18 at 3 (Plan and Investment Notice 2014, Matching Plan, 5623). The recordkeepers provided the same services to all three Plans. Ex. 19 at 85:3–24 (Golding Dep.).

## II.    Plaintiffs' claims.

ERISA imposes upon plan fiduciaries "strict standards of trustee conduct . . . derived from the common law of trusts—most prominently, a standard of loyalty and a standard of care[.]" *Fifth Third Bancorp v. Dudenhoeffer*, 573 U.S. 409, 416 (2014) (citation omitted). Those duties include acting "solely in the interest of the participants," "defraying reasonable expenses," and exercising "the care, skill, prudence, and diligence" that a prudent person "acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like

6

character and with like aims[.]" *Sweda*, 923 F.3d at 328 (quoting 29 U.S.C. §1104(a)(1)). Fiduciaries are obligated to "monitor … investments and remove imprudent ones." *Id.* (quoting *Tibble*, 135 S.Ct. at 1828–29). Because fees can have a significant impact on a plan's value, fiduciaries must be "vigilant" in understanding, monitoring, and negotiating both the method used to pay plan expenses and the amount of such payments, particularly in large plans with substantial bargaining power. *Id.* at 328–29.

Plaintiffs allege that Defendants breached their fiduciary duties by failing to monitor and remove imprudent investment options and failing to monitor and control the fees paid to the Plans' investment providers and recordkeepers. *See id.* at 324, 331–32. In Count I (former Count III), Plaintiffs assert that Penn caused the Plans to overpay for recordkeeping services by up to 600%, which resulted from Penn's failures to negotiate a cap on fees, to renegotiate the fee structure, or to solicit competitive bids. *Id.* at 324, 330–32; SAC ¶¶97–119, 187–95. Count II (former Count V) alleges breaches of fiduciary duties related to the Plans' investments: providing "higher cost retail class shares" of mutual funds instead of identically managed low-cost institutional class shares and retaining investment options charging "layers of unnecessary fees," costly and duplicative funds, and underperforming options which Penn failed to remove in favor of better-performing alternatives with lower fees. *Sweda*, 923 F.3d at 331–32; SAC ¶¶120–181, 196–209. Plaintiffs seek recovery of all losses to the Plans as well as equitable relief. SAC pp. 112–13 (Prayer of Relief).

### III.   The proposed class.

ERISA §502(a)(2) authorizes any plan participant to bring an action to enforce ERISA's fiduciary duties. 29 U.S.C. §1132(a)(2). A breaching fiduciary is personally liable for any resulting losses and is subject to equitable and other relief to benefit the plan. 29 U.S.C. §1109(a). Because "Section 502(a)(2) claims are, by their nature, plan claims," *Schering*, 589 F.3d at 594, Plaintiffs seek to represent all participants and beneficiaries in the Plans and request certification of the following class:

> All participants and beneficiaries of the University of Pennsylvania Matching Plan, the Supplemental Retirement Annuity Plan of the University of Pennsylvania, and the University of Pennsylvania Basic Plan from August 10, 2010 through the date of judgment, excluding the Defendants.

SAC ¶183.

### ARGUMENT

To obtain class certification, Plaintiffs must show that the class meets the four prerequisites of Federal Rule of Civil Procedure 23(a)—referred to as "numerosity," "commonality," "typicality," and "adequacy"—and that the class falls within "one of three types" specified in Rule 23(b). *Schering*, 589 F.3d at 596. Although the Rule 23 analysis must be "rigorous," *id.*, a court may not "engage in free-ranging merits inquiries at the certification stage." *Amgen, Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 466 (2013). "Merits questions may be considered to the extent—but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." *Id.*

## I.    Plaintiffs meet the requirements of Rule 23(a).

### A.    Numerosity

The class "is so numerous that joinder of all members is impracticable." Fed. R.
Civ. P. 23(a)(1). This requirement is generally satisfied if the number of class
members exceeds 40. *Stewart v. Abraham*, 275 F.3d 220, 226–27 (3d Cir. 2001). An
ERISA §502(a)(2) claim brought on behalf of a plan and thousands of participants
"plainly" satisfies Rule 23(a)(1). *Schering*, 589 F.3d at 596. Here, the proposed class
has well over 20,000 members, and thus satisfies Rule 23(a)(1). Answer ¶12; Exs. 8–
16, *see* p.2, Line 6g of each (listing number of participants with account balances).

### B.    Commonality

There are "questions of law or fact common the class." Fed. R. Civ. P. 23(a)(2).
This requirement concerns "the capacity of a classwide proceeding to generate
common answers apt to drive the resolution of the litigation." *Wal-Mart Stores, Inc.
v. Dukes*, 564 U.S. 338, 350 (2011). "The commonality requirement will be satisfied
if the named plaintiffs share at least one question of fact or law with the grievances
of the prospective class." *Schering*, 589 F.3d 585, 596–97 (quoting *Baby Neal v.
Casey,* 43 F.3d 48, 56 (3d Cir. 1994)). Because "even a single common question will
do," "th[e] bar is not a high one" and "is easily met." *Reyes v. Netdeposit, LLC*, 802
F.3d 469, 486 (3d Cir. 2015) (citations omitted).

Because an ERISA fiduciary breach claim is an action on behalf of a plan
regarding duties owed at the plan level, "commonality is quite likely to be satisfied."
*Schering*, 589 F.3d at 599 n.11; *see* 29 U.S.C. §1104(a)(1) ("a fiduciary shall
discharge his duties *with respect to a plan*") (emphasis added). Common questions

"sufficient to meet the commonality requirement in ERISA cases" include: "whether defendants were fiduciaries; whether defendants breached their duties to the Plan by failing to conduct an appropriate investigation" and "continuing to offer" certain investment options; "and whether the Plan suffered losses as a result of defendants' breaches." *Schering*, 589 F.3d at 597.

Defendants owed their duties to the Plans and made decisions at the Plan level that affected the Plans as a whole and, hence, all participants. The same menu of options, the same "uniform" fee structures, and the same fiduciary conduct applied to *all* participants. *See supra*, 5–6. Therefore, each element of Plaintiffs' claims—(1) fiduciary status, (2) breach of an ERISA-imposed duty, and (3) loss to the Plans, *Sweda*, 923 F.3d at 328—involves common questions rather than individualized questions. Accordingly, just as in *Schering*, there are numerous common questions upon which all class members' claims depend, including: (1) whether Defendants are fiduciaries; (2) whether Defendants breached their fiduciary duties in each respect alleged by Plaintiffs; (3) whether the Plans suffered resulting losses; (4) how to calculate the Plans' losses; and (5) what equitable relief should be imposed to remedy such breaches and to prevent future ERISA violations. SAC ¶184(b). The evidence needed to answer these contentions are Plan-level facts, and thus the same for all of the Plans' participants. If the evidence shows that Defendants failed to prudently monitor the Plans' investments or fees, that would resolve the validity of all participants' claims "in one stroke." *Dukes*, 564 U.S. at 350. Courts in similar ERISA cases routinely find that issues of fiduciary status, breach, and plan losses

are common questions. *Schering*, 589 F.3d at 596–97 (commonality "clearly satisfied" based on questions of whether defendants were fiduciaries, whether they breached their duties by failing to monitor and remove imprudent fund, and whether breaches caused plan losses); *Moore v. Comcast Corp.*, 268 F.R.D. 530, 535 (E.D. Pa. 2010) ("[A] number of common issues pervade this case, including whether defendants were fiduciaries of the Plan and whether defendants breached their fiduciary duties by allowing the Plan to invest" in allegedly imprudent investment); *In re Merck & Co., Inc. Sec., Derivative & ERISA Litig.*, No. 05-1151, 2009 WL 331426, *7 (D.N.J. Feb. 10, 2009) (common questions included issues of fiduciary status, breach, and losses); *Cryer v. Franklin Templeton Res., Inc.*, No. 16-4265, 2017 WL 4023149, *5 (N.D. Cal. July 26, 2017) (commonality satisfied because all participants "were provided the same investment options" and recovery would benefit "the Plan as a whole."); *Krueger v. Ameriprise Fin. Inc.*, 304 F.R.D. 559, 572 (D. Minn. 2014) ("[T]he questions of whether Defendants breached their fiduciary duties by causing the Plan to select imprudent investment options or pay excessive record-keeping fees, and whether the Plan suffered losses from those breaches, are common to all Plan participants' claims and, therefore, will generate answers common to all of the putative class members."); *Kanawi v. Bechtel Corp.*, 254 F.R.D. 102, 109 (N.D. Cal. 2008) ("[T]he common focus is on the conduct of Defendants: whether they breached their fiduciary duties to the Plan as a whole by paying excessive fees" and "made imprudent investment decisions").

The answers to those questions do not depend on the particular circumstances

of any one participant, because Defendants' centralized administration of the Plans is common to all class members. *See supra*, 5–6. Because "Defendants owed identical fiduciary duties to all members of the proposed class" and made decisions at the Plan level as to the Plans as a whole, commonality is satisfied. *Kanawi*, 254 F.R.D. at 110.

## C.   Typicality

The "claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R .Civ. P. 23(a)(3). The typicality inquiry involves "three distinct, though related, concerns:"

> (1) the claims of the class representative must be generally the same as those of the class in terms of both (a) the legal theory advanced and (b) the factual circumstances underlying that theory; (2) the class representative must not be subject to a defense that is both inapplicable to many members of the class and likely to become a major focus of the litigation; and (3) the interests and incentives of the representative must be sufficiently aligned with those of the class.

*Schering*, 589 F.3d at 599.

A representative's legal claims need not be perfectly identical to those of the class, but merely "typical, in common-sense terms," so as to "suggest[] that the incentives of the plaintiffs are aligned with those of the class." *Id.* at 598 (citation omitted). A representative's individual circumstances are sufficiently similar to those of the class when they have a similar "factual basis and support." *Id.* "Complete factual similarity is not required"; factual differences "do not render the representative atypical 'if the claim arises from the same event or practice or course of conduct that gives rise to the claims of the class members.'" *Id.* (quoting *Hoxworth v. Blinder, Robinson & Co.*, 980 F.2d 912, 923 (3d Cir. 1992)).

Given "the nature of ERISA § 502(a)(2) claims," "the first part of the typicality requirement—similarity of legal claims and the factual basis supporting those claims—will generally be satisfied." *Id.* at 599 n.11. Here, as participants in the Plans "bringing a claim under ERISA §502(a)(2)," "there is no doubt" that Plaintiffs' breach of fiduciary duty claims are identical to those of the class they seek to represent and are based on the same factual circumstances—participation in the Plans and Defendants' conduct in monitoring the Plans' fees and investment options. *See id.* at 599. Because a §502(a)(2) claim is inherently a representative claim, any participant's claim is necessarily typical of the claims of the class, since any participant is asserting *the Plans'* claim. Moreover, the named Plaintiffs are not subject to any unique defenses or other circumstances which would create a misalignment between their interests and incentives and those of the class. Accordingly, Plaintiffs satisfy Rule 23(a)(3).

Indeed, courts addressing similar ERISA fiduciary breach allegations involving excessive fees and imprudent investments have found typicality satisfied because all class members' claims "arise from the same alleged misconduct" and "are based upon the same legal theories concerning alleged breaches of fiduciary duties." *Cassell*, 2018 WL 5264640, *5; *Henderson*, 2018 WL 6332343, *6 ("The class members' claims are based on the same events and legal theories—breach of fiduciary duty in managing and monitoring the Plans. Proof of the defendants' alleged misconduct and the alleged harm would be the same for each class member rather than turning on individual circumstances."); *Clark*, 2018 WL 1801946, *5

13

("[E]ach named plaintiff's claim and each class member's claim is based on the same events and legal theory—a breach of fiduciary duty stemming from the defendants' alleged disloyal and imprudent process for selecting, administering, and monitoring the Plan's recordkeepers and investments. The same is true of the remedial theory[.]"); *Krueger*, 304 F.R.D. at 573 (finding typicality satisfied for claims "alleging breaches of fiduciary duties Defendants owed to the Plan," because named plaintiffs and class members were "seeking redress of similar grievances under the same legal and remedial theories"); *Kanawi*, 254 F.R.D. at 110 ("In light of the representative nature of a suit filed pursuant to [§1132](a)(2) and the injunctive relief sought … Plaintiffs' claims are sufficiently typical of those of other class members."); *see also Stanford v. Foamex L.P.*, 263 F.R.D. 156, 167–68 (E.D. Pa. 2009) (courts in ERISA cases "routinely" find typicality satisfied because claims arise from same course of fiduciary misconduct). The same reasoning applies here.

Given that the commonality and typicality requirements "are closely related and often tend to merge," *Marcus v. BMW of N. Am., LLC*, 687 F.3d 583, 597 (3d Cir. 2012), the extensive commonality of issues in this case regarding who are the fiduciaries, whether they breached their duties, and what are the Plans' losses, establishes that any participant's claim will be legally and factually typical of all participants' claims. Because Defendants' actions were directed to and affected the Plans as a whole, the claims of Plaintiffs and class members all arise from the same events and course of conduct—Defendants' failures to prudently monitor and control the Plans' recordkeeping fees, and to monitor the Plans' investment options on an

ongoing basis and remove imprudent ones. *See Tussey v. ABB, Inc.*, 746 F.3d 327, 336–37 (8th Cir. 2014); *Tibble*, 135 S.Ct. at 1828–29. All participants paid a portion of the Plans' recordkeeping fees, which were charged in a "uniform" manner to all participants. *See supra*, 5–6. And Defendants determined the Plans' investment options at the plan level. *Id.* Thus, all participants were harmed by Defendants' failure to monitor and remove imprudent investments, either by suffering losses from investing in imprudent funds, or by being deprived of prudent alternatives that would have been in the Plans if Defendants had fulfilled their duties. Each class member will have to rely on the same evidence to prove Defendants breached their duties, committed prohibited transactions, and harmed the Plans. The Plaintiffs and all class members are bringing the same claims under the same legal and remedial theory: enforcement through ERISA §502(a)(2) of Defendants' fiduciary obligations and liability to make good to the Plans the losses caused by Defendants' breaches of duty and to obtain appropriate equitable and other relief.

Defendants may argue that typicality or commonality is not met because each individual chose their own investments, which had varying fees and performance at different times. The same argument has repeatedly been rejected by multiple courts across the country. *Leber v. Citigroup 401(k) Plan Inv. Comm.*, 323 F.R.D. 145, 162–63 (S.D.N.Y. 2017); *Cryer*, 2017 WL 4023149, \*5; *Krueger*, 304 F.R.D. at 573; *In re Northrop Grumman Corp. ERISA Litig.*, No. 06-6213, 2011 WL 3505264, \*8, \*10 (C.D. Cal. Mar. 29, 2011). Courts "have repeatedly concluded that the typicality requirement was satisfied in defined contribution cases despite the fact that

'participants have individual accounts and select their investment funds from a variety of available options.'" *Cryer*, 2017 WL 4023149, *6 (quoting *Northrop*, 2011 WL 3505264, *10). Because a claim under ERISA §502(a)(2) is brought on behalf of a plan, "the plan takes legal title to any recovery, which then inures to the benefit of its participants and beneficiaries." *Graden*, 496 F.3d at 295. Individual differences in investment results therefore "are irrelevant at least until after fiduciary liability has been determined and assets restored to the plan; only then are allocations made to individual accounts." *Krueger*, 304 F.R.D. at 575 (citation omitted). If Plaintiffs recover "damages on behalf of the Plan, it will be up to the Plan administrator to determine how those damages are to be distributed." *Kanawi*, 254 F.R.D. at 109.

### D.    Adequacy

Plaintiffs "will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). The "adequacy inquiry 'has two components designed to ensure that absentees' interests are fully pursued.'" *Schering*, 589 F.3d at 602 (quoting *Georgine v. Amchem Prods., Inc.,* 83 F.3d 610, 630 (3d Cir. 1996)). First, counsel must be qualified to represent the class. *Id.* Second, the Court considers whether there are "conflicts of interest between named parties and the class they seek to represent." *Id.* Plaintiffs satisfy both components.

#### 1.    Plaintiffs' counsel is qualified to represent the class and will vigorously prosecute this action on behalf of the class.

Plaintiffs' counsel—Schlichter, Bogard & Denton LLP—has unparalleled experience in prosecuting ERISA fiduciary breach class actions and will fairly and adequately represent the interests of the class. The factors set forth in Rule 23(g)

16

"govern the appointment of, and questions concerning the adequacy of, class counsel." *Sheinberg v. Sorensen*, 606 F.3d 130, 133 (3d Cir. 2010); *see also New Directions Treatment Servs. v. City of Reading*, 490 F.3d 293, 313 (3d Cir. 2007) (stating that "the assurance of vigorous prosecution" by class counsel is a "significant factor" under Rule 23(a)(4)) (citation omitted). Those factors include:

> (i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class.

Fed. R. Civ. P. 23(g)(1)(A).

Prior to filing this action, Plaintiffs' counsel conducted a lengthy investigation of potential claims and legal issues. Schlichter Decl. ¶¶3–6, 20–21. Plaintiffs' counsel has extensive experience handling class actions, and the types of claims asserted in this case specifically, having been appointed as class counsel in 34 large ERISA fiduciary breach class actions, and having obtained numerous multi-million dollar settlements and judgments and significant affirmative relief to benefit participants in defined contribution plans. *Id.* ¶¶8–19, 22–31. The firm was class counsel in *Tibble v. Edison International*, 575 U.S. 523 (2015)—the only defined contribution plan excessive fee case decided by the U.S. Supreme Court to date—in which the Court ruled unanimously that ERISA fiduciaries have an ongoing duty to monitor and remove imprudent plan investments, and which resulted in two trial judgments for plan participants. Schlichter Decl. ¶16. The firm is recognized as a "pioneer and the leader in the field" of defined contribution plan excessive fee litigation, *Abbott v. Lockheed Martin Corp.*, No. 06-701, 2015 WL 4398475, *1 (S.D. Ill. July 17, 2015),

17

and "clearly experts in ERISA litigation," *Tussey v. ABB, Inc.*, No. 06-4305, 2012 WL 5386033, *3 (W.D. Mo. Nov. 2, 2012). Plaintiffs' counsel will commit all necessary financial resources and attorney and staff time to representing the class. Schlichter Decl. ¶¶7, 10, 11, 14, 18. In short, Plaintiffs' counsel is qualified to represent the class, will vigorously prosecute the action on behalf of the class, and should be appointed Class Counsel. *See* Fed. R. Civ. P. 23(g)(1).

    **2.**    **Plaintiffs have no conflicts with other class members and will vigorously prosecute this action on behalf of the class.**

The named Plaintiffs have no conflicts of interest with the class and have "the ability and the incentive to represent the claims of the class vigorously." *In re Cmty. Bank of N. Virginia*, 622 F.3d 275, 291 (3d Cir. 2010) (quoting *Hassine v. Jeffes*, 846 F.2d 169, 179 (3d Cir. 1988)). Plaintiffs' interests are aligned with the class members' interests because they all are acting on behalf of their Plans in seeking to enforce the fiduciary duties that Defendants owed to the Plans as a whole and to recover damages and other remedies that are due the Plans. *See* 29 U.S.C. §1109(a); *Russell*, 473 U.S. at 142 n.9, 144; *Graden*, 496 F.3d at 295–96. Because Plaintiffs are pursuing claims on behalf of the Plans and not individual claims, there is no conflict between Plaintiffs' individual interests and the interests of absent class members. To the contrary, the interests of all participants are aligned. *Krueger*, 304 F.R.D. at 574–75.

ERISA defendants often assert that named plaintiffs are inadequate due to a lack of personal knowledge of the underlying facts. However, "[t]he Supreme Court ... [has] expressly disapproved of attacks on the adequacy of a class representative

based on the representative's ignorance." *Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 222 F.3d 52, 60 (2d Cir. 2000) (citing *Surowitz v. Hilton Hotels Corp.*, 383 U.S. 363, 370–74 (1966)). That is particularly true here: "It is hornbook law" that in cases "in which the defendant's liability can be established only after a great deal of investigation and discovery by counsel against a background of legal knowledge, the representative need not have extensive knowledge of the facts." *Gunnells v. Healthplan Servs., Inc.*, 348 F.3d 417, 430 (4th Cir. 2003). Indeed, it is "understandable" that a plaintiff "might not fully understand the facts and legal theories of [a] complex ERISA action." *Henderson*, 2018 WL 6332343, *7. Thus, an ERISA plaintiff can demonstrate a sufficient understanding of the case by describing it in general terms. *Vellali*, 333 F.R.D. at 17 (plaintiff's testimony that "Yale fell short on the management of [the Plan's] funds" and that he understood responsibilities as class representative demonstrated adequacy); *Northrop*, 2011 WL 3505264, *14 (plaintiffs described allegations "that defendants' conduct caused them to pay excessive fees and caused the plans that they participated in to lose money"); *Kanawi*, 254 F.R.D. at 110–11 (plaintiffs understood theory that "Defendants acted imprudently as guardians of the Plan's assets").

  As shown in their attached declarations, each of the named Plaintiffs understands the nature of their claims—to recover the Plans' losses from excessive fees and imprudent investment options—and understands their duties to represent the class through the conclusion of this case. *See* Plaintiffs' Declarations, ¶¶2–3, 5 of each. They have carried out their duties to date by responding to discovery,

reviewing court documents from their attorneys, monitoring the progress of the action, and agreeing to appear for deposition. *Id.* ¶¶3–4. Plaintiffs are adequate representatives.

## II.     Plaintiffs meet the requirements of Rule 23(b)(1).

Having satisfied the four Rule 23(a) requirements, Plaintiffs need only satisfy one subsection of Rule 23(b). *Schering*, 589 F.3d at 596. Plaintiffs seek certification under Rule 23(b)(1) because claims for breach of fiduciary duty brought under ERISA §502(a)(2) are "paradigmatic" Rule 23(b)(1) claims. *Id.* at 604.

Certification under Rule 23(b)(1) is appropriate if "prosecuting separate actions by or against individual class members would create a risk of:"

> (A) inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class; or

> (B) adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests[.]

Fed. R. Civ. P. 23(b)(1). "Rule 23(b)(1)(A) considers possible prejudice to a defendant, while 23(b)(1)(B) looks to prejudice to the putative class members." *Kanawi,* 254 F.R.D. at 111.

Here, certification is proper under both Rule 23(b)(1)(A) and (B).

### A.     The proposed class satisfies Rule 23(b)(1)(A).

Rule 23(b)(1)(A) "takes in cases where the [defendant] is obligated by law to treat the members of the class alike" or "must treat all alike as a matter of practical necessity." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 614 (1997) (citation

omitted). "One person may have rights against, or be under duties toward, numerous persons constituting a class, and be so positioned that conflicting or varying adjudications in lawsuits with individual members of the class might establish incompatible standards to govern his conduct." Fed. R. Civ. P. 23, Adv. Comm. Note, 1966 amend., sub. (b)(1)(A).

Here, Defendants owed fiduciary duties the Plans, and thus to *all* participants, and hence all class members. *See* 29 U.S.C. §1104(a)(1). In discharging their duties to the Plans, Defendants, as fiduciaries, were obligated to treat all participants (and all class members) alike. *See In re Citigroup Pension Plan ERISA Litig.*, 241 F.R.D. 172, 179 (S.D.N.Y. 2006) (finding Fed. R. Civ. P. 23(b)(1)(A) satisfied "because the defendants have a statutory obligation, as well as a fiduciary responsibility, to 'treat the members of the class alike.'") (citation omitted).

Allowing 20,000 individual class members to pursue §502(a)(2) actions on behalf of the Plans could result in varying adjudications over whether Defendants breached their duties as alleged, how to measure damages to the Plans, and whether equitable relief is warranted. Inconsistent adjudications on those issues in "thousands of separate individual actions" would put Defendants in the "untenable" position of being subject to "differing standards of duty and, thus, differing standards of conduct," thereby leaving Defendants "in limbo" and "making compliance impossible." *Shanehchian v. Macy's, Inc.*, No. 07-828, 2011 WL 883659, *9 (S.D. Ohio Mar. 10, 2011).

As to Count I, the fact-finder will have to determine the Plans' losses by

deciding—with the assistance of expert testimony—how much the recordkeepers were paid, whether the services of all recordkeepers were necessary, and whether the fees were reasonable. *See, e.g., Tussey v. ABB, Inc.*, No. 06-4305, 2012 WL 1113291, *11–13 (W.D. Mo. Mar. 31, 2012) (calculating damages based on difference between recordkeeping fees paid by the plan each year and the reasonable market rate for the same services). Regarding Count II, the fact-finder will determine whether Defendants prudently and thoroughly investigated Plan investments on an ongoing basis, whether the options were prudent and reasonably priced, and the proper benchmark alternative to measure losses to the Plans. *See, e.g., Tussey v. ABB, Inc.*, 850 F.3d 951, 959 (8th Cir. 2017) (where fiduciary breached its duty in replacing a fund, the district court must measure the plans' resulting losses). Injunctive relief may also be appropriate to require removal of certain investment options, a bidding process regarding recordkeeping fees, or other reformation of the Plans. *See, e.g., Tussey*, 2012 WL 1113291, *39 (ordering breaching fiduciary to "utilize[] a competitive bidding process … to select a new recordkeeper"); *see also Clark v. Duke Univ.*, No. 16-1044, 2019 WL 2588029, *3 (M.D.N.C. June 24, 2019) (approving settlement which "obligates Duke to provide considerable non-monetary relief," including the use of an independent consultant and specified investment criteria); *Cassell v. Vanderbilt Univ.*, No. 16-2086, Doc. 147-1 at 22–23 (Article 10) (M.D. Tenn. Apr. 23, 2019) (settlement terms require fiduciary to obtain competitive recordkeeping bids).

Separate individual adjudications to resolve any one of those issues would

create incompatible standards for Defendants as to the amount in losses they must restore to the Plans and how to reform the Plans and otherwise remedy Defendants' breaches. As numerous courts have recognized, these claims are properly certified under Rule 23(b)(1)(A). *Piazza v. EBSCO Indus.*, 273 F.3d 1341, 1352–53 (11th Cir. 2001); *Stanford*, 263 F.R.D. at 173; *Vellali*, 333 F.R.D. at 18; *Henderson*, 2018 WL 6332343, \*9; *Clark*, 2018 WL 1801946, \*9; *Krueger*, 304 F.R.D. at 576–77 (citing cases); *Shanehchian*, 2011 WL 883659, \*9; *Harris v. Koenig*, 271 F.R.D. 383, 394–95 (D.D.C. 2010); *Kanawi,* 254 F.R.D. at 111.

### B.    The proposed class satisfies Rule 23(b)(1)(B).

For similar reasons, one participant's action over these claims effectively "would be dispositive of the interests" of the other participants' actions over the same claims because they concern the same actions, damages, and fiduciary duties owed to the Plans. Fed. R. Civ. P. 23(b)(1)(B). "Classic examples" of Rule 23(b)(1)(B) claims include "actions charging 'a breach of trust by an indenture trustee or other fiduciary similarly affecting the members of a large class of security holders or beneficiaries, and which require an accounting or like measures to restore the subject of the trust.'" *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 833–34 (1999) (quoting Fed. R. Civ. P. 23, Adv. Comm. Notes, 1966 Amends., subd. (b)(1)(B)). In such cases, the "shared character of rights claimed or relief awarded entails the risk that any individual adjudication by a class member disposes of, or substantially affects, the interests of absent class members." *Id.* at 834.

Because of the trust-like nature of a defined contribution plan, with fiduciary duties owed to the plan and not to particular individuals, courts have routinely

certified similar claims as Rule 23(b)(1)(B) class actions. *Schering*, 589 F.3d at 604; *Moore*, 268 F.R.D. at 538; *Stanford*, 263 F.R.D. at 173–74; *Vellali*, 333 F.R.D. at 18; *Henderson*, 2018 WL 6332343, *9–10; *Clark*, 2018 WL 1801946, *9; *Leber*, 323 F.R.D. at 165 & n.17 ("Most courts that have certified ERISA class actions alleging breaches of fiduciary duties have done so under Rule 23(b)(1)(B)."); *Moreno v. Deutsche Bank Ams. Holding Corp.*, No. 15-9936, 2017 WL 3868803, *9 (S.D.N.Y Sept. 5, 2017) ("[C]ourts regularly certify 23(b)(1)(B) class actions ... in ERISA cases alleging breach of a fiduciary duty[.]") (quoting Rubenstein, 3 *Newberg on Class Actions* §4:20 (5th ed. 2017)); *Krueger*, 304 F.R.D. at 577–78; *In re YRC Worldwide, Inc. ERISA Litig.*, No. 09-2593, 2011 WL 1303367, *9 (D. Kan. Apr. 6, 2011); *Harris*, 271 F.R.D. at 394 ("Historically, [§1132(a)(2)] actions brought on behalf of the entire plan have been considered especially appropriate for Rule 23(b)(1)(B) certification.").

Even if absent participants were not barred by res judicata from litigating the same claims, as a "practical matter" a prior adjudication of whether Defendants breached their duties to the Plans would influence a subsequent court's adjudication of the same claims. *Eliasen v. Green Bay & W. R. Co.*, 93 F.R.D. 408, 413 (E.D. Wis. 1982) (finding Rule 23(b)(1)(B) satisfied because "[o]ther courts could, as a matter of comity, give deference" to fiduciary breach and damages findings "as a determination of the identical factual questions presented in a subsequent suit."). Thus, Plaintiffs satisfy both Rule 23(b)(1)(A) and (b)(1)(B).

## CONCLUSION

For the reasons stated above, Plaintiffs respectfully request that the Court

certify all of Plaintiffs' claims as a class action under Federal Rule of Civil

Procedure 23(b)(1), and define the class as:

> All participants and beneficiaries of the University of Pennsylvania
> Matching Plan, the Supplemental Retirement Annuity Plan of the
> University of Pennsylvania, and the University of Pennsylvania Basic
> Plan from August 10, 2010 through the date of judgment, excluding
> the Defendants.

The Court should appoint as class representatives Jennifer Sweda, Benjamin A.

Wiggins, Robert L. Young, Faith Pickering, Pushkar Sohoni, and Rebecca N. Toner,

and appoint as class counsel Schlichter, Bogard & Denton LLP.

September 15, 2020                         Respectfully submitted,

                                          /s/ Sean E. Soyars
                                          Jerome J. Schlichter (admitted *pro hac vice*)
                                          Troy A. Doles (admitted *pro hac vice*)
                                          Heather Lea (admitted *pro hac vice*)
                                          Sean E. Soyars (admitted *pro hac vice*)
                                          SCHLICHTER, BOGARD & DENTON, LLP
                                          100 South Fourth Street, Ste. 1200
                                          St. Louis, MO 63102
                                          (314) 621-6115, Fax: (314) 621-5934

                                          *Lead Counsel for Plaintiffs*

                                          David Promisloff (ID# 200971)
                                          PROMISLOFF LAW, P.C.
                                          5 Great Valley Parkway, Suite 210
                                          Malvern, PA 19355
                                          Phone: (215) 259-5156
                                          Fax: (215) 600-2642
                                          david@prolawpa.com

                                          *Local Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on September 15, 2020.

/s/ Sean E. Soyars