# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JENNIFER SWEDA** *et al.*, *Plaintiffs* | : : : | **CIVIL ACTION** |
| v. | : : | |
| **THE UNIVERSITY OF PENNSYLVANIA** *et al.*, *Defendants* | : : : | **No. 16-4329** |

## <u>MEMORANDUM</u>

PRATTER, J.                                                                                                                            JUNE 28, 2021

      This class action litigation concerns alleged breaches of fiduciary duties and prohibited transactions by The University of Pennsylvania, Jack Heuer, and The University of Pennsylvania Investment Committee (collectively, "Penn") in violation of the Employee Retirement Income Security Act of 1974 (ERISA), as amended, 29 U.S.C. § 1001, *et seq.*, with respect to the management, operation, and administration of The University of Pennsylvania Matching Plan, The University of Pennsylvania Supplemental Retirement Annuity Plan, and The University of Pennsylvania Basic Plan (collectively, the "Plans"). The six named plaintiffs are former employees of The University of Pennsylvania and participants in the Plans. Specifically, Plaintiffs allege that Penn caused the Plans to pay unreasonable recordkeeping and administrative fees while also maintaining high-cost and underperforming investment options.

      The parties have negotiated a settlement. While agreeing to make certain payments and adopt certain practices, Penn denies the allegations, claims, and contentions, denies that it is liable at all to the Settlement Class, and denies that the Settlement Class or the Plans have suffered any harm or damage for which Penn could be held liable. The terms of the Settlement are set out in a Class Action Settlement Agreement dated January 13, 2021, executed by the parties and their counsel.

Plaintiffs filed Unopposed Motions for Certification of the Settlement Class, for Appointment of Class Counsel, and for Preliminary Approval of the Class Action Settlement on January 14, 2021. Then, on February 18, 2021, they filed an Amended Unopposed Motion for Preliminary Approval of the Class Action Settlement, noting that a new Settlement Administrator had been selected.

The Court will certify the class for settlement purposes, will approve the appointment of class counsel, and will preliminarily approve the Settlement Agreement, subject to a final fairness hearing.

## LEGAL STANDARDS

The approval process for a proposed class action agreement typically involves two steps. At the first step, a court holds a preliminary approval hearing to determine whether any obvious issues exist, determine whether the proposed class should be approved for settlement purposes (if necessary), and determine whether the parties' proposed notice plan is sufficient. *Leap v. Yoshida*, No. 14-cv-3650, 2015 WL 619908, at *2 (E.D. Pa. Feb. 12, 2015). "The preliminary approval determination requires the Court to consider whether '(1) the negotiations occurred at arm's length; (2) there was sufficient discovery; (3) the proponents of the settlement are experienced in similar litigation; and (4) only a small fraction of the class objected.'" *Id.* at *3 (quoting *In re Linerboard Antitrust Litig.*, 292 F.Supp.2d 631, 638 (E.D. Pa. 2003)).

"Because no class settlement can exist without a class, if the reviewing court has not yet certified a class [at the preliminary approval stage], it must determine whether the proposed settlement class should be certified for purposes of settlement." *Id.* In order to obtain class certification, plaintiffs must show that a proposed class meets the four prerequisites of Federal Rule of Civil Procedure 23(a)—namely, "numerosity," "commonality," "typicality," and

"adequacy"—and that the proposed class falls within "one of the three types" provided for in Rule 23(b). *In re Schering Plough Corp. ERISA Litig.*, 589 F.3d 585, 596 (3d Cir. 2009). A court must conduct a "rigorous analysis" to ensure that these prerequisites have been satisfied before certifying a class. *Id.*

The second step of the approval process for a proposed class action agreement involves the court conducting a final fairness hearing in which class members, having received notice of the proposed settlement, may voice any objections they may have. *Yoshida*, 2015 WL 619908, at *2. Additionally, "the final [class] certification decision is [also] left for the final fairness hearing." *Id.* at *3; *see Amchem v. Windsor*, 521 U.S. 591, 620 (1997).

## I. Preliminary Certification of the Class for Settlement Purposes

The parties have reached a settlement concerning all of the claims asserted in this litigation. The proposed Settlement Class covers all persons who participated in the Plans at any time during the Class Period—August 10, 2010 through January 14, 2021—including any Beneficiary of a deceased person who participated in one or more of the Plans during the Class Period but, as would be typical, excluding the individual members of the Investment Committee. Settlement Agreement ("S.A.") §§ 2.12, 2.27, 2.41. Plaintiffs assert that the proposed Settlement Class meets the requirements of Rules 23(a) and 23(b)(1). Accordingly, they ask the Court to certify the proposed class for settlement purposes only.

### A. Rule 23(a)

Plaintiffs must satisfy the four prerequisites of Rule 23(a)—numerosity, commonality, typicality, and adequacy—and show that the class falls into one of the types identified in Rule 23(b). The Court must conduct a "rigorous analysis" to ensure "each requirement of Rule 23 is actually met," or else the class cannot be certified. *Schering*, 589 F.3d at 596.

3

Thus, in order to certify a class under Rule 23(a), it must be shown that:

(a) the class is so numerous that joinder of all members is impracticable
(b) there are questions of law or fact common to the class
(c) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
(d) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).

### 1. *Numerosity*

The parties represent that during the proposed Class Period here, the Plans have had more than 20,000 participants. This is more than enough to meet the numerosity requirement. *See Schering*, 589 F.3d at 596 (finding numerosity "plainly satisfied" where class was "over 10,000 people").

### 2. *Commonality*

Rule 23(a)(2) requires that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). This requirement is satisfied "if the named plaintiffs share at least one question of fact or law with the grievances of the prospective class." *Schering*, 589 F.3d at 597 (quoting *Baby Neal v. Casey*, 43 F.3d 48, 56 (3d Cir. 1994)).

Here, Penn owed a fiduciary duty to the Plans and allegedly made decisions that negatively affected the Plans and their participants. Plaintiffs' claims center on Penn's alleged breach of its fiduciary duties under ERISA that resulted in financial losses to the Plans. These claims involve common questions upon which all of the proposed class members' claims would depend on, including Penn's status as fiduciary, whether Penn breached these duties, the resulting losses to the Plans, and the form of equitable relief that should be imposed. *See id.* (noting that commonality is satisfied when common questions included "whether defendants were fiduciaries and whether defendant breached their fiduciary duties under ERISA"). The answers to these questions do not

4

depend on the circumstances of any particular participant. Instead, Penn's conduct was based on fiduciary duties allegedly owed to all members of the proposed Settlement Class. Thus, the Court finds that commonality is satisfied.

### 3. Typicality

Rule 23(a)(3) requires that the "claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). Such an inquiry is necessary to ensure that the "incentives of the plaintiffs are aligned with those of the class." *Schering*, 589 F.3d at 598. The circumstances of a representative plaintiff are sufficiently similar to those of the proposed class when they are based on the same legal theory and claims. The similarity need not be perfect. *Id.*

Here, Plaintiffs assert that because Penn's actions allegedly affected the Plans as a whole, Plaintiffs' claims and those of the proposed class all arise from the same events and course of conduct—namely, Penn's alleged failure to monitor the Plans to ensure no excessive fees were being charged and that prudent investment options were being utilized. Each class member would have to rely on the same evidence and seek enforcement under § 502(a)(2) of ERISA.

Under these circumstances, courts customarily find a participant's ERISA fiduciary breach claims to be typical of the claims of all plan participants. *See Schering*, 589 F.3d at 604 (noting that "breach of fiduciary duty claims brought under § 502(a)(2) are paradigmatic examples of claims appropriate for certification"); *see also Kanawi v. Bechtel Corp.*, 254 F.R.D. 102, 110 (N.D. Cal. 2008) (finding that the "representative nature" of an ERISA suit pursuant to § 502(a)(2) and (a)(3) and the respective Plaintiffs' claims are "sufficiently typical of those of other class members"). As a result, the Court finds that the claims of the representative Plaintiffs here are typical of those of the proposed class members.

### 4. *Adequacy*

Lastly, under Rule 23(a)(4), Plaintiffs must "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). This requirement is designed to "uncover conflicts of interest between named parties and the class they seek to represent." *Amchem*, 521 U.S. at 625.

Plaintiffs contend that their counsel is qualified to represent the proposed class members and that there are no conflicts between Plaintiffs and the class they seek to represent. Plaintiffs assert that their interests align with that of the proposed class, arguing that Plaintiffs seek to enforce the fiduciary duties that Penn allegedly owed to the Plans and to recover damages and other equitable relief that resulted from the alleged breach of those duties. Plaintiffs represent that they are committed to prosecuting this action on behalf of all members and that they are pursuing their claims on behalf of the Plans, not individually, which, they argue, removes any potential conflict. The Court accepts those representations. As explained above, the Plaintiffs' claims are typical of the proposed class and at this time the Court does not see any apparent conflict of interest. *See Mehling v. New York Life Ins. Co.*, 246 F.R.D. 467, 475 (E.D. Pa. 2007).

Adequacy also examines the "qualifications of the counsel to represent the class." *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 532 (3d Cir. 2004) (quoting *In re Prudential Ins. Co. Am. Sales Prac. Litig. Agent Actions*, 148 F.3d 283, 313 (3d Cir. 1998)). Plaintiffs' counsel, Schlichter Bogard & Denton LLP, represents that their firm has "extensive experience in prosecuting ERISA fiduciary breach class actions and will fairly and adequately represent the interests of the class in this case." To that end, counsel asserts that it has thoroughly investigated the claims in this case and is fully committed to representing the class and vigorously prosecuting this case. Counsel highlights that it has been appointed as class counsel in 30 ERISA fiduciary breach class actions and has obtained substantial settlements and judgments in many of them.

Based on the information before it, the Court is satisfied that Plaintiffs' counsel will adequately represent the interests of the proposed class here. Counsel has previously been referred to as "experts" in this type of litigation, *Krueger v. Ameriprise Fin., Inc.*, No. 11-2781, 2015 WL 4246879, at *2 (D. Minn. July 13, 2015), and their work has been acknowledged as leading to fee reductions in the industry that total almost "$2.8 billion in annual savings for American workers and retirees," *Nolte v. Cigna Corp.*, No. 2:07-CV-2046-HAB-DGB, 2013 WL 12242015, at *2 (C.D. Ill. Oct. 15, 2013). Plaintiffs' counsel's substantial experience in this field reasonably leads to the conclusion that counsel will continue to exhibit their "skill and determination" in this case to diligently advocate on behalf of Plaintiffs and the proposed members of the class. *Sims v. BB&T Corp.*, No. 1:15-CV-732, 2019 WL 1993519, at *3 (M.D.N.C. May 6, 2019).

For these reasons, the Court will allow Plaintiffs to be appointed as class representatives and Schlichter Bogard & Denton LLP to be appointed as Class Counsel.

**B.     Rule 23(b)(1)**

After meeting all four prerequisites set forth in Rule 23(a), Plaintiffs must still satisfy at least one subsection of Rule 23(b). *Schering*, 589 F.3d at 596. Plaintiffs seek class certification under Rule 23(b)(1) because, they argue, their claims for breach of fiduciary duties under ERISA § 502(a)(2) are "paradigmatic" Rule 23(b)(1) claims. *Id.* at 604.

Rule 23(b)(1) provides for certification if "prosecuting separate actions by or against individual class members would create a risk of:"

> (A) inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class; or
> (B) adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests.

Fed. R. Civ. P. 23(b)(1). The former "considers possible prejudice to a defendant, while [the latter] looks to prejudice to the putative class members." *Kanawi*, 254 F.R.D. at 111. Plaintiffs contend that certification here is proper under both Rule 23(b)(1)(A) and (B).

### 1. *Rule 23(b)(1)(A)*

This rule involves situations where a defendant is "obligated by law to treat the members of the class alike" or must do so as a "matter of practical necessity." *Amchem*, 521 U.S. at 614.

To the extent Penn allegedly owed fiduciary duties to the Plans, it owed these duties to all Plan participants, which includes Plaintiffs and all members of the proposed class. *See* 29 U.S.C. § 1104(a)(1) (providing that "a fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries"). In carrying out these duties, fiduciaries are required to treat alike all participants of the Plans. *See In re Citigroup Pension Plan ERISA Litig.*, 241 F.R.D. 172, 179 (S.D.N.Y. 2006) (noting that under Rule 23(b)(1)(A) "defendants have a statutory obligation, as well as a fiduciary responsibility," to treat all class members the same).

The proposed class here is over 20,000 former and current Plan participants. Allowing each participant to pursue separate § 502(a)(2) actions on behalf of the Plans could easily result in varying adjudications over whether Penn allegedly breached its fiduciary duties, how to evaluate damages, and whether particular equitable relief is appropriate. Because a fiduciary in this type of case must treat plan participants uniformly, courts have certified classes under this rule given that "allowing individual actions to proceed could subject the fiduciaries to differing standards of duty." *Boley v. Universal Health Servs., Inc.*, No. 20-cv-2644, 2021 WL 859399, at *10 (E.D. Pa. Mar. 8, 2021) (listing cases).

The Court finds that class certification under Rule 23(b)(1)(A) is appropriate for the Plaintiffs' claims here, which include damages based on allegedly unreasonable fees paid to the

investment account recordkeepers as well as any alleged losses that resulted from imprudent investment options. Plaintiffs also seek possible injunctive relief to replace certain investment options, to solicit competitive bids for recordkeeping services, and other necessary changes to the Plans. If the Court allowed separate, individual adjudications to resolve any one of these issues, it could subject Penn to "varying and incompatible standards of conduct and liability." *Boley*, 2021 WL 859399, at *10. Of no small importance as well, such a scenario could lead to understandable public confusion about the consistency of the dispute resolution process of the federal courts. Accordingly, the Court finds certification under Rule 23(b)(1)(A) is proper here.

### 2. *Rule 23(b)(1)(B)*

Under this rule, class certification is appropriate when one plaintiff's pursuit of claims "would be dispositive of the interests" of the other plaintiffs' actions concerning the same claims that all relate to the same plans, damages, and alleged breaches of fiduciary duties. Fed. R. Civ. P. 23(b)(1)(B). Rule 23's Advisory Committee Notes state that certification under Rule 23(b)(1)(B) is generally appropriate in a case "which charges a breach of trust by an indenture trustee or other fiduciary similarly affecting the members of a large class of security holders or other beneficiaries, and which requires an accounting or like measures to restore the subject of the trust." Fed. R. Civ. P. 23, advisory committee's note to 1966 amendment.

As stated above, Plaintiffs in this case allege that Penn breached its fiduciary duties under ERISA with respect to the Plans. Thus, they argue, any decision regarding such a breach by Penn would necessarily affect the interests of the other Plan participants.

In *Schering*, the Third Circuit Court of Appeals explained that certification under Rule 23(b)(1)(B) was appropriate for a claim for breach of fiduciary duty under ERISA brought on behalf of an investment plan where the claims would "significantly impact the claims of other Plan

participants" and were "based on defendants' conduct, not . . . on unique facts and individual relationships." 589 F.3d at 604.

Here, allowing separate actions to be brought by individual participants could "result in outcomes likely to be dispositive of the interests of other Plan participants." *Boley*, 2021 WL 859399, at *11; *see Leber v. Citigroup 401(k) Plan Investment Committee*, 323 F.R.D. 145 at 165 & n.17 (S.D.N.Y. 2017) ("Most courts that have certified ERISA class actions alleging breaches of fiduciary duties have done so under Rule 23(b)(1)(B)") (listing cases). Thus, the Court also finds that class certification is appropriate under Rule 23(b)(1)(B).

For the foregoing reasons, the Court concludes that the Plaintiffs have established that their proposed class warrants class certification having met the requirements of Rules 23(a) and 23(b)(1).

## II. Motion for Preliminary Approval of Class Settlement

The parties also ask the Court to preliminarily approve their Class Action Settlement in accordance with Rule 23(e). Plaintiffs first brought this action against Penn in August 2016, alleging that Penn breached its fiduciary duties regarding the management, operation, and administration of the Plans. Several years of litigation followed, including a tour through the appellate process. After four weeks of negotiations near the end of 2020, the parties reached an agreement in principle to settle.

### A. Background

#### 1. *Procedural*

The Court writes for the benefit of the parties and assumes a basic familiarity with the background and history of this case. After the case was remanded from the Court of Appeals, Plaintiffs filed their Second Amended Complaint. The parties then proceeded to discovery, which

involved the production and exchange of almost 15,000 documents. The parties deposed over a dozen fact witnesses and interacted with many experts. In the fall of 2020, Plaintiffs filed a motion for class certification, which Penn opposed.[1] Shortly thereafter, the parties began settlement negotiations. These four weeks' worth of negotiations, as represented by Plaintiffs, "entailed intense, arms-length negotiations." The parties were eventually able to come to an agreement in principle to settle the case, which later resulted in the execution of the Settlement Agreement.

### 2. *Proposed Settlement Terms*

Per the terms of the parties' proposed Settlement Agreement, the Settlement Class includes all persons who participated in the Plans at any time during the Class Period—August 10, 2010 to January 14, 2021—including any beneficiary of a deceased participant but excluding the individual members of the Investment Committee. S.A. § 2.41. In exchange for the dismissal of this action and for entry of judgment as provided for in the Settlement Agreement, Penn will make available to Settlement Class members certain monetary and non-monetary benefits.

#### a. **Monetary Relief**

Penn has agreed to pay $13,000,000 into an interest-bearing settlement fund. This fund will be used to pay the participants, administrative expenses to facilitate settlement, attorneys' fees and costs, and compensation to the class representatives.

#### b. **Non-Monetary Relief**

In addition to the Settlement Fund, Penn has agreed to several non-monetary terms as set forth in Article 10 of the Settlement Agreement. Some of these benefits include using a single recordkeeper for all recordkeeping and administrative services moving forward, charging for those

---

[1] Prior to settlement, Penn had filed a Motion to Strike Plaintiffs' Jury Demand (Doc. No. 83) and Plaintiffs had filed a Motion for Class Certification (Doc. No. 84). Both motions were opposed, and generations of briefing ensued. The Court now finds these motions to be moot.

11

services on a fixed-fee basis, and updating the investment options for participants. The current recordkeeper will not be allowed to use participant information for the purpose of soliciting the Plans' current participants and selling non-Plan products and services to them, unless specifically requested by a plan participant.

The Settlement Period will take place over three years. Penn will inform Plan participants of their ability to redirect their assets and utilize the new investment options. During the three-year period, Penn will provide annual training to the Plan fiduciaries regarding duties under ERISA.

### c. Notice and Compensation for Class Representatives

The costs to administer the Settlement, including costs to provide notice, will be paid from the settlement fund. The Settlement Agreement also calls for the appointment of an Independent Fiduciary and a Settlement Administrator. The parties selected Gallagher Fiduciary Advisors as the Independent Fiduciary and Angeion Group as the Settlement Administrator. The Settlement Administrator will provide notices electronically to all class members with a current email address and by first-class mail to the current or last known address of all class members who do not have a current email address.

Plaintiffs also seek a $25,000 payment for each of the named Plaintiffs. They contend that this amount is consistent with case law that recognizes the value put forth by individuals who step forward to represent a class, especially in a contested litigation where the potential benefit to any individual does not outweigh the cost of prosecuting class-wide claims, in addition to the possibility that no recovery is obtained and the risk that the representatives will have alienated their employer and peers.[2]

---

2   The Court notes that "[i]ncentive awards are not uncommon in class action litigation." *See Chakejian v. Equifax Info. Servs., LLC*, 275 F.R.D. 201, 220 (E.D. Pa. 2011) (quoting *Cullen v. Whitman*

12

#### d. Attorneys' Fees and Costs

Plaintiffs' counsel requests attorneys' fees—to be paid out of the settlement fund—in an amount no more than one-third of the total settlement amount, or $4,333,333, in addition to reimbursement for costs incurred not to exceed $410,000. Counsel contends that a contingent one-third fee is the market rate for complex ERISA excessive fee cases and that it is the rate that the named Plaintiffs contractually accepted. Plaintiffs' counsel also represent that they will not seek any attorneys' fees for time associating with class members or Penn during the Settlement Period or for work required in future years to enforce the settlement, if necessary.[3]

### B. Discussion

In making its preliminary approval determination, the Court must consider whether "(1) the negotiations occurred at arm's length, (2) there was sufficient discovery, (3) the proponents of the settlement are experienced in similar litigation; and (4) only a small fraction of the class objected." *Yoshida*, 2015 WL 619908, at *3 (quoting *Linerboard*, 292 F. Supp. at 638). After

---

*Med. Corp.*, 197 F.R.D. 136, 145 (E.D. Pa. 2000)). Even very generous incentive awards such as that proposed here are not uncommon.

[3] The Court declines to further address attorneys' fees at this time given that a formal motion for attorneys' fees will be filed at a later date (and at least 30 days prior to the deadline for class members to file objections to the settlement).

considering those factors, if the Court determines that the settlement should be preliminarily approved, "an initial presumption of fairness" is established.[4] *Id.*

### 1. *Arm's-Length Negotiations*

As explained above, the Court will approve Schlichter Bogard & Denton LLP to be Class Counsel in this matter having determined that the firm would adequately represent the members of the class. *See, e.g., In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prod. Liab. Litig.*, 55 F.3d 768, 787 (3d Cir. 1995) ("Ordinarily, a court relies on class status, particularly the adequacy of representation required to maintain it, to infer that the settlement was the product of arm's length negotiations.").

Here, the negotiations took place over several weeks and reportedly involved protracted discussions that were led by experienced counsel, on both sides, who have handled and resolved many similar ERISA cases involving complex settlement negotiations. *See* Doc. Nos. 95-3 ¶ 2 (Schlichter Decl.), 95-4 ¶ 6 (Lea Decl.). At this time, the Court is satisfied that the settlement negotiations between the parties indeed took place at arm's length.

### 2. *Discovery*

Prior to settlement negotiations, the parties had been engaged in this litigation for over four years. Plaintiffs' counsel, well-known in these types of matters, asserts that they thoroughly investigated the possible claims in this case before filing the complaint on behalf of Plaintiffs. Afterwards, the parties engaged in significant fact discovery, which included the production and exchange of thousands of pages of documents, numerous fact and expert depositions, and

---

[4] After preliminary approval is granted, a court will then hold a final fairness hearing at a later date, during which time class members—who will have then received notice of the proposed settlement—may voice any objections they have, and a court will consider several additional factors when deciding whether to grant final approval to the settlement. *Yoshida*, 2015 WL 619908, at *2.

consultations with experts in the fields of investment management and recordkeeping. The Court has no doubt that extensive discovery has taken place in this case.

### 3. *Plaintiffs' Counsel*

As previously discussed, Plaintiffs' counsel has significant experience in handling ERISA class actions involving the type of retirement plans at issue in this case. In fact, one court has commended them for being a "preeminent firm" in this field and "achiev[ing] unparalleled results on behalf of its clients." *Nolte*, 2013 WL 12242015, at *3-4. It is evident Plaintiffs' counsel has performed exemplary work for its clients in past cases. The Court is satisfied that Schlichter Bogard & Denton LLP has substantial experience in litigation similar to that of this case, which informed their negotiations with opposing counsel and the eventual Settlement Agreement, and which will enable them to adequately represent and advocate for the proposed class here.

### 4. *Objections to Preliminary Approval of the Settlement*

At this stage, there have been no initial objections to the Settlement and no other issues have been raised. As outlined above, the parties represent that their proposed notice program will ensure that all class members are informed about the Settlement and its terms.

Notice must be given in a "reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1)(B). "Individual notice must be provided to those class members who are identifiable through reasonable effort." *Eisen v. Carlisle and Jacquelin*, 417 U.S. 156, 175 (1974).

Here, the proposed notice plan will consist of notices sent via email, if a current email address is available, or via first-class mail to the current or last known address of a class member. The Settlement Administrator is required to take additional steps to reach class members whose notice letters are returned as undeliverable. A dedicated settlement website will also be created.

The notices will provide class members with all the appropriate information to learn about the terms of the Settlement, including how the settlement will proceed, the nature and extent of the release, attorneys' fees and costs, when objections can be filed and how to do so, information about the fairness hearing, and how to access the website, which will host the full settlement documents and any subsequent modifications.

The Court finds that preliminary approval of the Settlement is warranted. This litigation has been ongoing for several years. At the end of last year, counsel for both sides engaged in more than a month of negotiations which eventually led to the proposed Settlement Agreement here. The record reflects that these negotiations took place at arm's length. Furthermore, significant discovery has taken place in this case. Plaintiffs' counsel has extensive experience in handling these types of matters and achieving successful results for its clients. Lastly, there have been no formal (or informal) objections at the preliminary stage. After notices are sent out, proposed class members will have an opportunity to voice their objections and raise any issues they might have.

## CONCLUSION

For the foregoing reasons, the Court will preliminarily certify the Class for settlement purposes, approve the appointment of Plaintiffs' counsel as Class Counsel, and preliminarily approve the parties' Settlement Agreement. An appropriate order follows.

BY THE COURT:

GENE E.K. PRATTER
UNITED STATES DISTRICT JUDGE