**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA
PHILADELPHIA DIVISION**

JENNIFER SWEDA, ET AL.,

|  |  |  |
|---|---|---|
| | *Plaintiffs*, | |
| v. | | No. 2:16-cv-4329-GEKP |
| THE UNIVERSITY OF PENNSYLVANIA, ET AL., | | |
| | *Defendants*. | |

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF UNOPPOSED MOTION FOR
<u>FINAL APPROVAL OF CLASS SETTLEMENT</u>**

Table of Contents

BACKGROUND ...................................................................................................... 1

   I.   Plaintiffs' Claims .......................................................................................... 1

   II.   The Litigation History ................................................................................. 2

   III.   The Terms of the Proposed Settlement. ..................................................... 3

         A.   Monetary Relief. .................................................................................. 3

         B.   Non-Monetary Terms. ......................................................................... 4

   IV.   Proceedings Since Preliminary Approval and Class Members' Reaction ...................... 5

ARGUMENT ........................................................................................................... 7

   I.   The *Girsh* Factors Weigh in Favor of Approving the Settlement ................................... 8

         A.   The Complexity, Expense, and Duration of the Litigation if the Case Proceeded to Trial Supports Approval (Factor 1) ..................................................... 8

         B.   The Class's Reaction to the Settlement Strongly Supports Approval (Factor 2).... 10

         C.   Settlement After Full and Complete Discovery Supports Approval (*Girsh* Factor 3) ...................................................................................... 14

         D.   At All Stages of the Action, Plaintiffs Faced Significant Risk of Not Prevailing (*Girsh* Factors 4-6) ................................................................................. 15

         E.   Defendant's Ability to Pay Favors the Settlement or Is Neutral (Factor 7) ............ 16

         F.   The Settlement is Reasonable in Light of the Best Possible Recovery and Risks of Litigation (Factors 8 and 9) ............................................................. 17

   II.   The Court Should Approve Plaintiffs' Motion for Attorneys' Fees and Costs ............. 18

   III.   The Court Should Approve a $25,000 Award to Each Class Representative ............... 18

CONCLUSION ....................................................................................................... 18

Table of Authorities

## Cases

*Bekker v. Neuberger Berman Grp. 401(k) Plan Inv. Comm.*,
   504 F.Supp.3d 265 (S.D.N.Y. 2020) ............................................................... 13

*Cunningham v. Cornell Univ.*,
   No. 16-6525, 2019 WL 4735876 (S.D.N.Y. Sept. 27, 2019), *reconsideration denied*, No.
   16-6525, 2020 WL 1165778 (S.D.N.Y. Mar. 11, 2020)........................................ 15

*Delijanin v. Wolfgang's Steakhouse Inc.*,
   No. 18-7854, 2021 WL 535635 (S.D.N.Y. Feb. 12, 2021) ................................... 13

*Ehrheart v. Verizon Wireless*,
   609 F.3d 590 (3d Cir. 2010) ......................................................................... 7

*Girsh v. Jepson*,
   521 F.2d 153 (3d. Cir. 1975) ................................................................... 8, 15

*Guippone v. BH S & B Holdings*, LLC,
   No. 09-01029, 2011 WL 5148650 (S.D.N.Y. Oct. 28, 2011)................................ 13

*Hecker v. Deere & Co.*,
   556 F.3d 575 (7th Cir. 2009) ................................................................. 13, 15

*In re Aetna Inc.*,
   No. MDL 1219, 2001 WL 20928 (E.D. Pa. Jan. 4, 2001) ..................................... 17

*In re AOL Time Warner ERISA Litig.*,
   2006 WL 2789862 (S.D.N.Y. Sept. 27, 2006).................................................... 7

*In re Auto. Refinishing Pain Antitrust Litig.*,
   617 F.Supp.2d 336 (E.D. Pa. 2007) ............................................................... 11

*In re Cendant Corp. Litig.*,
   264 F.3d 201 (3d Cir. 2001) ................................................................. 10, 14

*In re Chambers Dev. Sec. Litig.*,
   912 F.Supp. 822 (W.D. Pa. 1995).................................................................. 9

*In re Glob. Crossing Sec. & ERISA Litig.*,
   225 F.R.D. 436 (S.D.N.Y. 2004) ................................................................... 7

*In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.*,
   55 F.3d 768 (3d Cir. 1995) ............................................................. 14, 15, 17

*In re Nat'l Football League Players Concussion Inj. Litig.*,
   821 F.3d 410 (3d. Cir. 2016) ....................................................................... 8

*In re Prudential Ins. Co. of Am. Sales Practices Litig.*,
   962 F.Supp. 450 (D.N.J. 1997)..................................................................... 9

*In re Warfarin Sodium Antitrust Litig.*,
   391 F.3d 516 (3d Cir. 2004) ........................................................................ 9

*Lachance v. Harrington,*
   965 F.Supp. 630 (E.D. Pa. 1991) ................................................................ 15

*Lazy Oil v. Witco Corp.,*
   95 F.Supp.2d 290 (W.D. Pa. 1997) .............................................................. 17

*Lenahan v. Sears, Roebuck & Co.,*
   No. 02-0045, 2006 WL 2085282 (D.N.J. July 24, 2006), *aff'd*, 266 Fed. Appx 114 (3d
   Cir. 2008) ........................................................................................................ 9

*McDonough v. Toys "R" Us, Inc.,*
   80 F.Supp. 626 (E.D. Pa. 2015) .................................................................. 16

*Pennwalt Corp. v. Plough,*
   676 F.2d 77 (3d Cir. 1982) ............................................................................ 7

*Perry v. FleetBoston Fin. Corp.,*
   229 F.R.D. 105 (E.D. Pa. 2005) .................................................................. 15

*Renfro v. Unisys Corp.,*
   671 F.3d 314 (3d Cir. 2011) ........................................................................ 15

*Sacerdote v. New York Univ.,*
   328 F.Supp.3d 273 (S.D.N.Y. 2018) ........................................................... 16

*Sacerdote v. New York University,*
   9 F.4th 95 (2d Cir. 2021) ............................................................................ 16

*Savani v. URS Prof'l Solutions LLC,*
   121 F.Supp.3d 564 (D. S.C. 2015) .............................................................. 12

*Sweda v. Univ. of Penn.,*
   923 F.3d 320 (3d Cir. 2019) .......................................................................... 2

*Tibble v. Edison International,*
   843 F.3d 1187 (9th Cir. 2016) ..................................................................... 10

*Tibble v. Edison International,*
   No. 07-5359, 2010 WL 2757153 (C.D. Cal. July 8, 2010) ........................... 10

*Tibble v. Edison International,*
   No. 07-5359, ECF No. 612 (C.D. Cal. June 9, 2020) .................................. 10

*Tussey v. ABB, Inc.,*
   746 F.3d 327 (8th Cir. 2014) ....................................................................... 10

*Tussey v. ABB, Inc.,*
   850 F.3d 951 (8th Cir. 2017) ....................................................................... 10

*Tussey v. ABB, Inc.,*
   No. 06-4305, 2012 WL 1113291 (W.D. Mo. March 31, 2012) ..................... 10

*Tussey v. ABB, Inc.,*
   No. 06-4305, ECF No. 869 (W.D. Mo. Aug. 16, 2019) ................................ 10

*Univ. of Pennsylvania v. Sweda,*
   140 S.Ct. 2565 (2020) ................................................................................... 2

**Statutes**

29 U.S.C. §1104(a)(1)(A) ............................................................................. 1, 2

29 U.S.C. §1104(a)(1)(B) ............................................................................. 1, 2

29 U.S.C. §1106(a)(1) .................................................................................. 1, 2

Pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, Plaintiffs seek this Court's final approval of the Settlement. Plaintiffs brought this action against the University of Pennsylvania, the Investment Committee, and Jack Heuer ("Defendants") alleging that they breached their fiduciary duties under the Employee Retirement Income Security Act of 1974 ("ERISA") by causing The University of Pennsylvania Matching Plan, The University of Pennsylvania Supplemental Retirement Annuity Plan, and The University of Pennsylvania Basic Plan (all three plans collectively referred to as the "Plan" or "Plans") to pay unreasonable recordkeeping and administrative fees and maintaining high-cost, underperforming investment options. Docs. 1, 69. After years of hard-fought litigation, the parties reached a Settlement that provides a substantial monetary recovery for the Class along with significant non-monetary relief that will benefit the Plan for years. For the reasons set forth below, this Court should provide final approval to the Settlement.

## BACKGROUND

### I.    Plaintiffs' Claims

Plaintiffs filed their complaint on August 11, 2016. Doc. 1. They amended their complaint as of right under Rule 15(a)(2) on November 21, 2016. Doc. 27. Plaintiffs asserted seven counts against Defendants. *Id*. In Counts I and II, Plaintiffs alleged Defendants breached their duty of loyalty and prudence under 29 U.S.C. §1104(a)(1)(A)–(B) and committed prohibited transactions under §1106(a)(1) by locking the Plan into providing the CREF Stock Account, regardless of its performance or fees, and locking the Plan into TIAA's recordkeeping services. In Counts III and IV, Plaintiffs alleged that Defendants breached their duties of loyalty and prudence under 29 U.S.C. §1104(a)(1)(A)–(B) and committed prohibited transactions under §1106(a)(1) by using two vendors instead of a single recordkeeper, allowing those recordkeepers to receive unreasonable compensation, failing to prudently monitor and control recordkeeping expenses,

and failing to solicit bids from other recordkeepers. In Counts V and VI, Plaintiffs alleged that

Defendants breached their duties of loyalty and prudence under 29 U.S.C. §1104(a)(1)(A)–(B)

and committed prohibited transactions under §1106(a)(1) by failing to prudently monitor Plan

investment options, resulting in the use of high-cost and underperforming funds compared to

alternatives available to the Plan. As to Count VII, to the extent Defendants delegated any of

their fiduciary duties, Plaintiffs alleged that Defendants failed to prudently monitor the actions of

those individuals.

## II.    The Litigation History

On January 5, 2017, Defendants moved to dismiss the amended complaint. Doc. 33. On

September 21, 2017, the Court granted, *in full*, Defendants' motion to dismiss. Doc. 57. Plaintiffs

appealed the Court's dismissal to the Third Circuit Court of Appeals. The Third Circuit

overturned this Court's dismissal as to Counts III and V and remanded those counts to this Court

for further proceedings. *Sweda v. Univ. of Penn.*, 923 F.3d 320 (3d Cir. 2019). Prior to that

however, Defendants sought a stay to the mandate while they petitioned the United States

Supreme Court for further review. Not only did the Third Circuit deny Defendants' stay request,

the Supreme Court denied Defendants' Petition for Writ of Certiorari. *Univ. of Pennsylvania v.

Sweda*, 140 S.Ct. 2565 (2020).

After remand from the Third Circuit, Plaintiffs filed their second amended complaint. Doc.

69. From that point, the parties prepared for discovery by negotiating a stipulated confidentiality

and seal order (Doc. 32), a supplemental protective order (Doc. 82), and a stipulation for

discovery of hard copy documents and electronically stored information (or "ESI") (Doc. 76).

As to discovery, the parties issued written discovery, and Plaintiffs received almost 15,000

*documents* (not pages) produced by the Defendants and relevant third parties. This voluminous

set of materials required extensive review by Class Counsel. As noted previously, all of this

information required close and detailed analysis along with discussions with consultants and experts retained by Class Counsel. Doc. 95-4 at ¶4. After the materials were thoroughly analyzed, the parties proceeded to the deposition phase of discovery. *Id*. at ¶5. In total, the parties took the deposition of thirteen fact witnesses. *Id*. The majority of these depositions lasted the full seven hours allowed under the Federal Rules. *Id*. During the discovery phase, the parties were engaged with experts in preparation for their expert disclosures and supporting reliance materials. Plaintiffs were engaged with several consultants and experts on this matter. *Id*.

While discovery was proceeding, on September 15, 2020, Plaintiffs filed their motion and supporting memorandum for class certification. Docs. 84, 84-02. In response, Defendants filed their opposition on November 3, 2030, and Plaintiffs filed their reply brief on November 24, 2020. Docs. 91, 92.

At this time, the parties commenced settlement negotiations. These discussions covered a period of over four weeks and entailed intense, arms-length negotiations. Doc. 95-4 at ¶6. Ultimately, the parties were able to reach an agreement to settle the case, which culminated in the execution of the Settlement Agreement. *Id*.

## III.    The Terms of the Proposed Settlement.

In exchange for the dismissal of all of Plaintiffs' remaining claims, Defendants will make available to Class Members the benefits, both monetary and affirmative relief, as described previously and as summarized again below.

### A.  Monetary Relief.

Defendants will deposit $13,000,000 (the "Gross Settlement Amount") in an interest-bearing settlement account (the "Qualified Settlement Fund"). The Gross Settlement Fund will be used to pay the Class Members' recoveries, Administrative Expenses to facilitate the Settlement, Class Counsel's Attorneys' Fees and Costs, and the Class Representatives'

Compensation, if approved by the Court. Any reserve or remaining funds will be deposited into

the Plans to pay legitimate plan expenses. No remainder of the monetary relief will revert back to

the Defendants. The Qualified Settlement Fund will be held in trust, as required by the Escrow

Agent. See Declaration of Troy Doles ("Doles Decl.") ¶7, Ex. 3 (reciting that Angeion Group

shall serve as the Escrow Agent with Huntington Bank serving as the custodial bank).[1]

### B. Non-Monetary Terms.

In addition to the monetary relief provided in the Settlement, Defendants agreed to

significant non-monetary or affirmative relief that will inure to the benefit of the Plan and Plan

participants for years to come. Those terms, as identified and cited below in Section 10 of the

Settlement, include the following:

10.1   In or around Spring 2021, the Plan will begin utilizing a single recordkeeper for recordkeeping and administrative services and be charged for those services on a fixed-fee (per Plan participant) basis. Defendants further acknowledge that in or around Spring 2021, the Plan intends to offer an updated investment menu, including investment options offered in the lowest-cost share class available to the Plan.

10.2   There will be a Settlement Period of three years from the Settlement Effective Date during which Defendants will comply with the terms set forth herein.

10.3   Defendants agree that, in connection with the implementation of the updated investment menu in or around Spring 2021, the Plan fiduciaries will inform Plan participants of their ability to redirect their assets held in any frozen investment options to investment options available in the updated investment menu or brokerage account option.

10.4   During the Settlement Period, Defendants shall continue to provide annual training to Plan fiduciaries regarding their fiduciary duties under ERISA.

10.5   To the extent an asset-based fee is used to offset a fixed-fee for recordkeeping and administrative services, any asset-based fee collected in excess of the fixed-fee amount that is not used to defray reasonable expenses of administering the Plan shall be rebated back to Plan participants. The Plan shall allocate excess amounts to participants in a manner the Plan fiduciaries determine to be fair, equitable, and appropriate

---

[1] The Court requested certain revisions to the escrow agreement. Those revisions are reflected in the attached.

under the circumstances.

10.6     Within thirty (30) calendar days after the end of each year of the Settlement Period, and within thirty (30) calendar days after the conclusion of the Settlement Period, Defendants will provide Class Counsel with the following information current as of the end of the most recent calendar quarter: a list of the Plan's investment options, the fees for those investment alternatives, and a copy of the Investment Policy Statement(s) (if any) for the Plan.

10.7     Before the expiration of the Settlement Period, Defendants or their consultant shall initiate a request for proposal ("RFP") for recordkeeping and administrative services.  Within sixty (60) days after the conclusion of the RFP, Defendants shall notify Class Counsel that they have fulfilled this obligation.

10.8     Defendants agree to instruct the current recordkeeper of the Plan in writing within ninety (90) calendar days of the Settlement Effective Date that, in performing previously agreed-upon recordkeeping services with respect to the Plan, the recordkeeper must not use information received as a result of providing services to the Plan and/or the Plan's participants to solicit the Plan's current participants for the purpose of cross-selling non-Plan products and services, including, but not limited to, Individual Retirement Accounts ("IRAs"), non-Plan managed account services, life or disability insurance, investment products, and wealth management services, unless in response to a request by a Plan participant. In the event Defendants enter into a new recordkeeping agreement with an existing recordkeeper or a new recordkeeper during the Settlement Period, Defendants agree that any resulting contract shall include a provision restricting the recordkeeper from using information received as a result of providing services to the Plan and/or the Plan's participants for the purpose of soliciting the Plan's current participants for the purpose of cross-selling non-Plan products and services, unless in response to a request by a Plan participant. Doc. 95-2.

As explained in prior briefing, this significant non-monetary relief substantially and materially adds value to the Settlement beyond the value of the monetary relief. Doc. 107-1 at 18.[2] Indeed, based on Class Counsel's estimates and those of an expert, the total value of the Settlement is approximately $38 million. *Id.*

## IV.    Proceedings Since Preliminary Approval and Class Members' Reaction

Plaintiffs filed an unopposed motion for preliminary approval of the Settlement on January 14, 2021. Doc. 95. The Court granted the motion and preliminarily approved the Settlement on

---

[2] Citation to page numbers is to the pdf page header assigned in the CM/EFC filing.

June 29, 2021. Docs. 102, 103. As required, on August 27, 2021, Plaintiffs filed a Motion for

Attorneys' Fees, Class Representatives' Compensation Awards and Expenses. Doc. 107.

Also on August 27, 2021, the Settlement Administrator, Angeion Group, caused the Court-

approved Settlement Notices to be e-mailed or mailed to 44,252 Class Members. *See* Declaration

of Markham Sherwood of Angeion Group ¶4 ("Angeion Decl."). Notices were mailed to 1,266

participants whose emails were undeliverable. *Id*. ¶8. Of all physically mailed notices, 90 were

returned as undeliverable. *Id.* ¶9. New addresses were located for 64 Class Members. *Id.* The

Court-approved Settlement Notice was also published on a dedicated Settlement Website hosted

by Class Counsel. Doles Decl. ¶4. Class Counsel established the dedicated website

(www.upenn403bsettlement.com) and published the Court-approved Settlement Notice with the

Settlement Agreement on that website on August 26, 2021. *Id.* In addition, the Settlement

Administrator hosted a toll-free number for automated information and live operators to answer

any questions for members of the Settlement Class. Angeion Decl. ¶10. As of October 8, there

have been a total of 423 calls. *Id.* Of those calls, 139 were connected with a live agent. *Id.*

As instructed by these Court-approved Settlement Notices, Class Members were provided the

opportunity to object to the Settlement by writing to the Court and lodging their formal, written

objections to the Settlement. Per this Court's order, objections were due to the Court by

September 27, 2021. Doc. 103 ¶¶7, 11(B). Out of over 44,252 notices sent, no objections have

been formally filed with the Court as instructed. However, two written letters containing

objections to varying degrees were mailed to counsel for the parties or the Settlement

Administrator. In full candor with the Court, those two letters are attached and addressed briefly

below. Doles Decl. ¶¶8,9, Exs. 4, 5.

In addition to the overwhelming, positive reaction to the Settlement by Class Members, the

Settlement's Independent Fiduciary, Gallagher Fiduciary Advisors, LLC, has thoroughly

reviewed all aspects of the Settlement and has approved the Settlement and Class Counsel's

attorneys' fees and expenses as reasonable. *See* Doles Decl. ¶6, Ex. 2.

## ARGUMENT

In this Circuit, there is a "strong presumption in favor of voluntary settlement agreements."

*Pennwalt Corp. v. Plough*, 676 F.2d 77, 79−80 (3d Cir. 1982). "The strong judicial policy in

favor of class action settlement contemplates a circumscribed role for the district courts in

settlement review and approval proceedings." *Ehrheart v. Verizon Wireless*, 609 F.3d 590, 594-

95 (3d Cir. 2010). Indeed, this Circuit encourages settlements "because they promote the

amicable resolution of disputes and lighten the increasing load of litigation faced by the federal

courts." *Id*. "In addition to the conservation of judicial resources, the parties may also gain

significantly from avoiding the costs and risks of a lengthy and complex trial." *Id*.

This Settlement merits that presumption. As detailed previously and acknowledged by the

Court, this Settlement was the product of arm's-length negotiations by and between experienced

counsel on both sides. Doc. 102 at 14. Further, substantial discovery occurred for a period of

years prior to any settlement discussions. *Id*. at 15. In addition, "[t]he imprimatur of the

independent fiduciary is further evidence of the procedural fairness of the Settlement." *In re AOL

Time Warner ERISA Litig.*, 2006 WL 2789862, at *5 (S.D.N.Y. Sept. 27, 2006) (citing *In re

Glob. Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 462 (S.D.N.Y. 2004)). Here, the

independent fiduciary has approved all aspects of the Settlement as fair and reasonable and only

two objections, *out of 44,252 notices sent*, have been asserted against the Settlement. For these

reasons, the Settlement is presumptively fair and should be approved.

In determining the final fairness of a proposed settlement, the Third Circuit has enumerated

nine factors to be considered. *Girsh v. Jepson*, 521 F.2d 153, 157 (3d. Cir. 1975). These "*Girsh*

factors" are the following:

> (1) the complexity, expense and likely duration of the litigation;
>
> (2) the reaction of the class to the settlement;
>
> (3) the stage of the proceedings and the amount of discovery completed;
>
> (4) the risks of establishing liability;
>
> (5) the risks of establishing damages;
>
> (6) the risks of maintaining the class action through the trial;
>
> (7) the ability of the defendants to withstand a greater judgment;
>
> (8) the range of reasonableness of the settlement fund in light of the best possible recovery; [and]
>
> (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

The Settling Parties have the burden of establishing that a weighing of the *Girsh* factors weighs

in favor of the Settlement being approved. *In re Nat'l Football League Players Concussion Inj.*

*Litig.*, 821 F.3d 410, 437 (3d. Cir. 2016).[3] As explained below, a weighing of the *Girsh* factors

results in this Settlement being appropriate for final approval.

**I.     The *Girsh* Factors Weigh in Favor of Approving the Settlement**

>   **A.   The Complexity, Expense, and Duration of the Litigation if the Case Proceeded to Trial Supports Approval (Factor 1)**

The first *Girsh* factor, the probable costs in both time and money if the litigation

continued, strongly supports final approval of the Settlement. *In re Nat'l Football League*, 821

---

[3] The Third Circuit has also noted additional factors that *may* be considered, depending on the type of case and the nature of the settlement details. *In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 323 (3d Cir. 1998). Class Counsel submits that those *Prudential* factors are more prudential in nature and not entirely applicable to nuances of this Settlement.

F.3d at 437. A Settlement should be approved when "continuing litigation through trial would have required additional discovery, extensive pretrial motions addressing complex factual and legal questions, and ultimately a complicated, lengthy trial." *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 536 (3d Cir. 2004). In making this assessment, this Court should balance the proposed Settlement against the time and expense of achieving a potentially more favorable result through further litigation. If the complexity, expense, and likely duration of the litigation are significant, the court should weigh this factor in favor of approving the settlement. *Lenahan v. Sears, Roebuck & Co.*, No. 02-0045, 2006 WL 2085282, at *12 (D.N.J. July 24, 2006), *aff'd*, 266 Fed. Appx 114 (3d Cir. 2008) (citing *In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 962 F.Supp. 450, 536 (D.N.J. 1997)).

Although this case was hotly litigated for over four years, there is no question that significant stages and milestones of litigation remained. As noted previously, at the time a settlement was announced to the Court, the parties were in the middle of briefing class certification and preparing expert disclosures. Doc. 95-4 at ¶¶5−6. After those pieces of the litigation were complete, expert challenges and dispositive motion practice remained. Undoubtedly, the continued litigation in this matter would be long, complex, expensive, and burdensome. Assuming the litigation reached a trial, there would likely be appeals by one or both parties. Given this uncertainty, as compared to a Settlement that provides significant monetary relief and affirmative relief, a "bird in the hand in this litigation is surely worth more than whatever birds are lurking in the bushes." *In re Chambers Dev. Sec. Litig.*, 912 F.Supp. 822, 838 (W.D. Pa. 1995).

As previously explained to the Court, two cases in which Class Counsel were directly involved demonstrate the risk of prolonged litigation and appeals. In *Tibble v. Edison*

*International*, a case filed in 2007, the district court entered judgment in favor of the plaintiffs on

a limited portion of their claims in 2010. No. 07-5359, 2010 WL 2757153 (C.D. Cal. July 8,

2010). That case then went through six years of appeals, including to the Supreme Court, until it

ultimately was remanded for another trial in 2016. 843 F.3d 1187 (9th Cir. 2016). Only in 2020,

thirteen years after the case was filed, did the plan finally recover its damages. No. 07-5359, ECF

No. 612, (C.D. Cal. June 9, 2020). In *Tussey v. ABB, Inc.*, the case was filed in 2006 and

culminated in a judgment in the favor of the plaintiffs in 2012. No. 06-4305, 2012 WL 1113291

(W.D. Mo. March 31, 2012). That judgment, however, was reversed in substantial part two years

later. 746 F.3d 327 (8th Cir. 2014). On remand, the judgment was substantially reduced, 850

F.3d 951, 954–56 (8th Cir. 2017), then that judgment was reversed on a second appeal, *id.* at

959–61, and on remand, the case was ultimately settled in 2019, No. 06-4305, ECF No. 869,

(W.D. Mo. Aug. 16, 2019).

Although this case was heavily litigated for four years, there is no question that multiple

years remained if the litigation continued. For these reasons, by concluding this case with a

favorable settlement that significantly benefits past, present and future Plan participants now, the

first *Girsh* factor is easily met.

### B.  The Class's Reaction to the Settlement Strongly Supports Approval (Factor 2)

As described above, per this Court's instructions, the Settlement Administrator provided

notice of the Settlement to over 44,252 Class Members. No formal objections have been

lodged/filed with the Court. This is proof positive of the overwhelming support in favor of the

Settlement. *In re Cendant Corp. Litig.*, 264 F.3d 201, 235 (3d Cir. 2001) ("The vast disparity

between the number of potential class members who received notice of the Settlement and the

number of objectors creates a strong presumption that this factor weighs in favor of the

Settlement"); *In re Auto. Refinishing Pain Antitrust Litig.*, 617 F.Supp.2d 336, 342 (E.D. Pa.

2007) ("The fact that an overwhelming majority of the Class did not file objections is a significant element to consider in determining the overall fairness of the settlements"). This factor resoundingly supports the final approval of the Settlement.

In full candor with the Court, although not filed with the Court as instructed, two individuals voiced their opposition to being included in the Settlement and opposed the award of Class Counsel's attorneys' fees and the Class Representatives' Compensation. With all due respect to these two individuals, the points made by each do not warrant this Court's rejection of the Settlement.

As to the first communication, the Class Member voiced her opposition to the notice and requested to be excluded from the Settlement. Doles Decl. ¶8, Ex. 4 (herein "Class Member A"). Respectfully, both points are without merit. As to the notices, the parties and this Court spent considerable time and effort editing the Settlement Notices to ensure readability and comprehension. The Settlement Notices contained clear instructions and provided contact information to the Settlement Administrator for additional questions.

Class Member A's request that she be excluded from the Settlement is contrary to this Court's Rule 23(b)(1) non-opt out class certification. As noted by the Court, allowing Class Members to opt out and potentially pursue separate actions under ERISA "could easily result in varying adjudications over whether Penn allegedly breached its fiduciary duties." Doc. 102 at 8. Further, Class Member A's final comments that she does not and will not support *any* settlement of a class action is simply contrary to the well-established Third Circuit authority that encourages arm's-length negotiated settlements of complex cases by experienced counsel. As noted above, this is precisely what this Settlement represents. For these reasons, these objections and requests should be rejected.

As to the second communication, the Class Member voiced his opposition to the amount of the Class Representatives' Compensation awards and to the amount of Class Counsel's requested attorneys' fees. Doles Decl. ¶9, Ex. 5 (herein "Class Member B"). First, both points were extensively addressed in Plaintiffs' Memorandum in Support of their Motion for Award of Attorneys' Fees, Expenses, and Class Representative Awards. Doc. 107-1. Those arguments are incorporated herein. For those reasons, and respectfully stated, both points raised by Class Member B are without merit.

As to the amount of the Class Representatives' Compensation, Class Counsel extensively explained why the award to the Class Representatives was appropriate. Those reasons included their substantial efforts in litigating this case, the risk in participating in the Class Action, and the low ratio of the total awards compared to the total Settlement amount, among others. Doc. 107-1 at 33−35. Again, those points and arguments are incorporated herein. Briefly, however, the Court specifically noted that approving incentive awards is "not uncommon in class action litigation." Doc. 102 at 12, FN 2. The Court specifically went on to state that "even very generous incentive awards such as that proposed here are not uncommon." *Id*. "A substantial incentive award is appropriate in [a] complex ERISA case given the benefits accruing to the entire class in part resulting from [named plaintiffs'] efforts." *Savani v. URS Prof'l Solutions LLC*, 121 F.Supp.3d 564, 577 (D. S.C. 2015). Class Member B's assertion that the requested Class Representatives' Compensation lacks evidentiary support, such as billing records evidencing time spent or proof of alienation from participating in the Class Action, is without merit. That level of "proof" is simply not required for these awards. "Even where there is not a record of actual retaliation, notoriety, or personal difficulties, Class Representatives merit recognition for assuming the risk of such for the sake of absent class members. Today, the fact that a plaintiff has filed a federal

lawsuit is searchable on the internet and may become known to prospective employers when evaluating the person." *Guippone v. BH S & B Holdings*, LLC, No. 09-01029, 2011 WL 5148650, at \*7 (S.D.N.Y. Oct. 28, 2011) (citation omitted); *see also Delijanin v. Wolfgang's Steakhouse Inc.*, No. 18-7854, 2021 WL 535635, at \*4–5 (S.D.N.Y. Feb. 12, 2021) (same); *Bekker v. Neuberger Berman Grp. 401(k) Plan Inv. Comm.*, 504 F.Supp.3d 265, 271 (S.D.N.Y. 2020) (holding that, in an ERISA action, a named plaintiff risks "alienation from employers or peers"). To be clear, however, the risk Class Representatives assume in pursuing this type of action is unquestionably real. In a similar but unsuccessful ERISA class action case, a court entered judgement for costs *against* the Class Representatives for over $200,000. *Hecker v. Deere & Co.*, 556 F.3d 575, 591 (7th Cir. 2009) (upholding an order assessing costs against the named plaintiffs for $219,211). Class Member B's objection on this point is without merit.

As to the amount of the requested attorneys' fees and costs to Class Counsel, Class Member B's points are, again, simply without merit, and Class Counsel again incorporates those arguments previously submitted in favor of the award of fees herein. Doc. 107-1. Nevertheless, Class Counsel will briefly address the high points and ignore the Class Member B's ad hominem attacks on Class Counsel's firm. First, Class Member B correctly notes that the market rate for this type of work is a contingency fee award, typically 33 1/3%, given the significant risk assumed in taking the case. The Third Circuit is quite clear that a percentage of the recovery as a fee is appropriate. 107-1 at 14−15. Class Member B's second point, that Class Counsel has filed other litigation against other universities alleging similar claims is also correct. It is logical that the recognized pioneering law firm of this type of important litigation would have a track record of filing these types of cases. *Id*. at 19. Class Member B's implied assertion that all breach of fiduciary duty cases are somehow the same, thus warranting a reduced fee due to some form of

efficiencies, is without merit. Each case is unique and extremely complex. *Id*. at 24–25 (detailing

unique case histories for just two landmark 401(k) decisions handled by Class Counsel).

Moreover, every fee awarded to Class Counsel in previous cases has been approved by a federal

judge. *Id*. at 26–27.

Class Member B's disagreement with Class Counsel's hourly rates is also without merit.

Those rates have been approved by federal courts repeatedly. *Id*. at 29–30. Nevertheless, Class

Counsel also applied local rates acknowledged by this District in assessing the reasonableness of

the requested fees. *Id*. at 31. This alternative analysis confirms the reasonableness of the

requested fees.

Finally, while Class Counsel readily acknowledges the valuable work performed by all Class

Members in their day-to-day work for the University of Pennsylvania, Class Member B's

comparisons between that work and Class Counsel's work are wholly inapt and contrary to the

Third Circuit's authority allowing for an award based on a percentage of the recovery in this line

of work. *Id*. at 14–15. For these reasons, Class Member B's objections should be rejected.

### C. Settlement After Full and Complete Discovery Supports Approval (*Girsh* Factor 3)

As described in detail previously, after four years of litigation, fact discovery was fully

completed, thus providing Class Counsel with a complete appreciation of the merits of the case.

*In re Cendant,* 264 F.3d at 235 (quoting *In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.*,

55 F.3d 768, 813 (3d Cir. 1995)). In total, Defendants and third parties produced over 15,000

documents. Doc. 95-1 at 14. In addition, the parties took thirteen fact witness depositions, many

of which lasted all day. *Id.* at 15. Those efforts were detailed extensively. Doc. 107-1 at 11–13.

A settlement after such extensive discovery supports approval.

### D.  At All Stages of the Action, Plaintiffs Faced Significant Risk of Not Prevailing (*Girsh* Factors 4-6)

*Girsh* factors four through six all "examine what the potential rewards (or downside) of litigation might have been had class counsel elected to litigate the claims rather than settlement them." *GMC*, 55 F.3d at 814. Those factors are: (4) the risks of establishing liability; (5) the risks of establishing damages; and (6) the risks of maintaining the class action through trial. *Girsh*, 521 F.2d at 157. In addressing these factors, the Court need not delve into the details of the strengths and weaknesses of every contested point in the litigation. Rather, the Court may credit Class Counsel's views on these issues in light of their experience litigating similar cases. *Perry v. FleetBoston Fin. Corp.*, 229 F.R.D. 105, 115 (E.D. Pa. 2005) (quoting *Lachance v. Harrington,*, 965 F.Supp. 630, 638 (E.D. Pa. 1991)).

To be clear, Class Counsel believed, and continues to believe, strongly in the merits of this case. Nevertheless, there are undeniable and significant legal obstacles and defenses with respect to establishing liability and damages, along with maintaining the case through dispositive motion practice and trial. First, there is the overarching difficulty in litigating complex cases. Although Class Counsel pioneered this area of litigation, that experience did not come without losses. See *Hecker,* 556 F.3d at 575; *Renfro v. Unisys Corp.*, 671 F.3d 314 (3d Cir. 2011), and *Cunningham v. Cornell Univ.*, No. 16-6525, 2019 WL 4735876 (S.D.N.Y. Sept. 27, 2019), *reconsideration denied*, No. 16-6525, 2020 WL 1165778 (S.D.N.Y. Mar. 11, 2020) (also filed in August 2016 with similar allegations as in this case). As noted above, one of those losses, *Renfro*, came from the Third Circuit.

The extreme risk at all stages in *this* Action is undeniable. As noted above, this Court dismissed, in total, this Action at the motion to dismiss stage. Doc. 57. Although Plaintiffs successfully reversed that decision, in part, in the Third Circuit, there is no question that the

15

previous complete dismissal loomed heavy over the ultimate success of the remaining claims.[4]
For this reason, establishing liability and damages would have been *extremely* difficult and
subject to a certain appeal. Throughout this litigation, Defendants vigorously disputed that they
breached any duty or were liable for any amount of losses. Not surprisingly, Defendants continue
to deny any wrongdoing today. There is no question that Defendants would have mounted a
vigorous defense at the class certification stage, expert disclosure stage, summary judgment stage
and trial.

The risk to Plaintiffs that their claims might fail is underscored by the result of another trial
handled by Class Counsel in a similar 403(b) university case. *Sacerdote v. New York Univ.*, 328
F.Supp.3d 273 (S.D.N.Y. 2018). In *Sacerdote*, after an eight-day bench trial, the court entered its
judgment wholly in favor of the defendants and against the plaintiffs. Moreover, the Second
Circuit recently *affirmed* that decision relating to the investment performance claims also raised
here. *Sacerdote v. New York University*, 9 F.4th 95, 120-21 (2d Cir. 2021)(rejecting plaintiffs'
claims relating to the CREF Stock Account and the TIAA Real Estate Account). Given these
challenges in establishing liability, damages, and maintaining the action through trial, this
Settlement and the relief provided therein is a significant victory for the Plan and the Class
Members.

### E.  Defendant's Ability to Pay Favors the Settlement or Is Neutral (Factor 7)

While Defendants might, theoretically, be able to pay more than the agreed upon amount of
$13 million, that alone is not enough to suggest that the Settlement is unfair. The Third Circuit
"regularly find[s] a settlement to be fair even though the defendant has the practical ability to pay
greater amounts." *McDonough v. Toys "R" Us, Inc.,* 80 F.Supp. 626, 645 (E.D. Pa. 2015)(citing

---

[4] To the extent this case was to be a non-jury case, this Court is best suited to evaluate Class
Counsel's chances of success on the merits of this case.

cases), *Lazy Oil v. Witco Corp.*, 95 F.Supp.2d 290, 318 (W.D. Pa. 1997). This factor favors final approval or, at a minimum, is neutral.

### F. The Settlement is Reasonable in Light of the Best Possible Recovery and Risks of Litigation (Factors 8 and 9)

Considering that the Class Action was previously dismissed in total, a $13 million recovery is an incredible result. Moreover, with the estimated value of the non-monetary relief increasing the total value of the Settlement to $38 million, this result matches or exceeds the value of similar settlements. Doc. 107-1 at 18.

As stated during the preliminary approval hearing, based on the facts in this case, Class Counsel reasonably believed that the claims of excessive recordkeeping and administrative fees were the factually strongest claims. See May 25, 2021 Hearing Transcript at 19:22−20:23. Based on Class Counsel's experience, and as stated to the Court, Class Counsel estimated that the $13 million monetary recovery is likely just more than half of the best recovery possible for this claim. *Id*. Of course, this all assumes that Class Counsel convinced this Court that Defendants were in fact liable for breaches of their fiduciary duties. As noted above, and to say the least, clearing the liability hurdle was far from certain, if not remote. Thus, in viewing the Settlement amount in light of the significant uphill battle in establishing liability and damages, the recovery is immensely fair. *GMC*, 55 F.3d at 806. For this reason, and in Class Counsel's views and experience, this is a significant result for the Class Members. *In re Aetna Inc.*, No. MDL 1219, 2001 WL 20928, at *6 (E.D. Pa. Jan. 4, 2001).

As a meaningful point of reference confirming the reasonableness of the monetary value, the Settlement of $13 million is consistent with or larger than settlements reached in similar cases. *Henderson v. Emory University*, No. 16-cv-2920 (N.D. Ga. 2020) ($16,750,000 settlement); *Sweda v. University of Pennsylvania*, No. 16-cv-4329 (E.D. Pa. 2020) ($13,000,000 settlement);

17

*Cassell v. Vanderbilt University*, No. 16-cv-2086 (M.D. Tenn. 2019) ($14,500,000 settlement);

*Kelly v. Johns Hopkins University*, No. 16-cv-2835 (D. Md. 2019) ($14,000,000 settlement);

*Short v. Brown University*, 17-cv-0031 (D.R.I. 2019) ($3,500,000 settlement); *Clark v. Duke University*, No. 16-cv-1044 (M.D.N.C. 2018) ($10,650,000 settlement); *Daugherty v. University of Chicago*, No.17-cv-03736 (N.D. Ill. 2018) ($6,500,000 settlement). Considering the risk of continued litigation, including the risk of establishing liability and damages, against the potential recovery on the claim most likely to succeed, the settlement of $13,000,000 is reasonable.

Given that all the *Girsh* factors are met, the Settlement should be finally approved.

## II.     The Court Should Approve Plaintiffs' Motion for Attorneys' Fees and Costs

Class Counsel have submitted a detailed and unopposed motion, along with supporting declarations, that demonstrate the reasons that they should receive $4,333,333.33 in attorneys' fees and $369,857 in expenses from the Gross Settlement Fund. Doc. 107. For the reasons stated in that motion, Class Counsel requests that those fees and expenses be awarded from the Gross Settlement Amount.

## III.    The Court Should Approve a $25,000 Award to Each Class Representative

Class Counsel has requested that the Court award $25,000 to each Class Representative as an award from the Gross Settlement Amount for their invaluable service in this case. Doc. 107 at 33–35. For the reasons stated in Plaintiffs' motion (Doc. 107), and those additional reasons provided herein, that award is reasonable and fair compensation for the work provided, and risks undertaken, by those representatives. *Id.*

## CONCLUSION

Plaintiffs respectfully request that the Court grant final approval of the Settlement as fair, reasonable, and adequate.

Dated: October 13, 2021

/s/ Troy A. Doles
SCHLICHTER BOGARD & DENTON LLP
Jerome J. Schlichter*
Troy A. Doles*
Kurt C. Struckhoff*
100 South Fourth Street, Ste. 1200
St. Louis, MO 63102
Phone: 314- 621-6115
Fax: 314-621-5934
jschlichter@uselaws.com
tdoles@uselaws.com
kstruckhoff@uselaws.com
*(admitted *pro hac vice*)
*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on October 13, 2021, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system, which will automatically send e-mail notification of such filing to the attorneys of record.

/s/ Troy A. Doles
*Counsel for Plaintiffs*